Bard's Estate.

Argued January 23, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

434

*Robert Brigham,* with him *Charles B. Ermentrout,* for appellant.

*Thomas I. Snyder,* of *Zieber & Snyder,* for appellee.

OPINION BY MR. JUSTICE BARNES, May 20, 1940:

This appeal raises the question whether the trustee in the present case should be surcharged for failure to apportion a stock dividend and the proceeds of stock subscription rights between the life tenants and remainder interests.

The testator, Adam Bard, died on January 25, 1901. At the time of his death he owned 30 shares of Reading Trust Company stock, appraised at $3,750 and 24 shares of Penn National Bank of Reading stock, appraised at $5,832. He specifically bequeathed these shares to the Reading Trust Company "in trust to hold the same and to pay the income and dividends therefrom to Mamie Bard and Laura Bard [his grandchildren] for and during their natural lives and at and upon the death of either of them without issue . . . to pay the income and dividends to the survivor for and during her natural life." As both life tenants are now living and unmarried, it is unnecessary to state the provisions of the will respecting the distribution of the principal of the

trust. The shares were awarded to the trustee which received them as of April 30, 1901.

In August, 1924, the trustee received from the Penn National Bank rights to subscribe to 48 shares of its stock, and in July, 1930, rights to subscribe to 200 shares. These rights were sold by the trustee for $1,488 and $148.49, respectively, and the net proceeds were allocated by it to the corpus of the trust and reinvested in mortgage participation certificates. In June, 1930, the original 24 shares of the Penn National Bank, received from the testator, having a par value of $100 per share, were exchanged for 240 shares having a par value of $10, and on or about July 1, 1930, a stock dividend of 360 shares was declared which the trustee has retained as principal, thereby increasing the holding of the estate to 600 shares of this stock.

In 1933 the Penn National Bank and Trust Company, successor to the Penn National Bank, became insolvent and a receiver was appointed. On January 15, 1935, the Comptroller of the Currency levied an assessment of 100% upon the shareholders of the Bank, and a claim against this estate for $6,000 was made by the receiver. Thereupon, on April 30, 1938, the trustee filed its first account from which it appeared that the principal and income then in its hands were insufficient to pay the assessment and the interest thereon.

At the audit in the court below, the claim of the receiver was resisted by the life tenants and by the trustee ad litem for unborn contingent remaindermen. The life tenants also asserted a claim for surcharge against the trustee for the proceeds of the stock subscription rights and for such portion of the stock dividend which they contend should have been distributed to them as income in 1924 and 1930. The auditing judge awarded all of the funds in the hands of the accountant to the receiver and rejected the life tenants' claim for surcharge. Upon the dismissal of their exceptions to the adjudication by the court in banc, the life tenants appealed to this Court.

The assignments of error relate solely to the refusal of the court below to impose a surcharge upon the fiduciary for its failure to apportion the proceeds of the stock subscription rights and the stock dividend. The life tenants have abandoned their exceptions to the award to the receiver.

It is the assertion of the life tenants that all or part of the stock dividend and the proceeds of the subscription rights were income, and that the failure of the trustee to account therefor until the stock had become worthless and the proceeds had been absorbed by the claim of the receiver, was a breach of trust for which the fiduciary should be held liable. The trustee, on the other hand, contends that the life tenants are precluded by their acquiescence from advancing this claim, and further, that these items were properly allocated to the corpus of the trust.

The trustee urges that the life tenants acquiesced in the retention as principal of the proceeds of the subscription rights and the stock dividend, because they failed to object, or to take steps to secure an adjudication of their rights. But there is nothing in the record to support the conclusion of the court below that the life tenants had knowledge of the stock dividend and subscription rights. The trustee did not file an account until 1938, and there is no proof or admission that statements were rendered to the life tenants informing them of these items, or of the circumstances affecting them. Their acceptance of income without objection cannot be regarded as acquiescence in the absence of any evidence that they knew its source, or understood its nature. In *Card's Est. (No. 2)*, 337 Pa. 82, where a similar situation was before us, we said (p. 88) : "There was no acquiescence on the part of such beneficiaries, because of their insufficient knowledge of the facts concerning the stock dividends listed by the trustee as corpus." See also Restatement, Trusts, Sections 216 (2) (b) ; 219, Comment (c).

In this particular the present case is to be distinguished from *Clabby's Est.*, 338 Pa. 305, where the income beneficiaries were familiar with the details of the administration of the estate, and of the securities composing the principal of the trust, from its inception. Their acquiescence was conclusively established.

However, the record in the present case is likewise devoid of evidence which would justify the imposition of a surcharge upon the trustee. Those who seek to surcharge a fiduciary for a breach of trust must bear the burden of proving the particulars of his wrongful conduct. As we said in *Clabby's Est.*, supra, (pp. 309-10) : ". . . the fundamental principle must be borne in mind that a trustee who has acted in good faith and with common skill and prudence, will not be charged for more than he has received because a loss to the trust has occurred during his administration."

It is conceded that stock dividends and the proceeds of the sale of stock subscription rights are apportionable between income beneficiaries and interests in remainder. It is not in every instance that a stock dividend is distributable to the life tenants, for if the additional issue results in an impairment of the intact value of the corpus, it is the duty of the trustee to hold it in protection of the remaindermen. See *Waterhouse's Est.*, 308 Pa. 422; *Lueders' Est.*, 337 Pa. 155; *Barnes' Est.*, 338 Pa. 555, and see also *Jones v. Integrity Trust Co.*, 292 Pa. 149. The trustee was under a duty to exercise reasonable skill and prudence in determining what portion of these assets, if any, represented income to be distributed to the life tenants in accordance with the terms of the trust. See *Opperman's Est. (No. 1)*, 319 Pa. 455, 463; *Card's Est.*, supra, (p. 88). Also it should have informed the income beneficiaries of the receipt of these items and their disposition. See *Klein v. Dunn, Receiver*, 337 Pa. 480; Restatement, Trusts, Section 173. There is nothing in the record to indicate that the trustee failed in the performance of these duties.

The mere retention of these assets as corpus, even if it be assumed that they represented income, wholly or partially, is not evidence that the trustee failed to exercise common skill and prudence in ascertaining their status. There is no allegation on behalf of the life tenants that the trustee omitted to take any of the steps necessary to a proper determination of the question, or that it acted in bad faith in allocating the entire stock dividend and the proceeds of the sale of the subscription rights to principal. The life tenants offered no evidence to prove that the trustee neglected to make full disclosure of the facts to them, nor that they requested an accounting. The burden of establishing the wrongful conduct of the trustee rested upon them, as we have stated. Regardless, therefore, of the question whether the dividend and the rights properly belonged to income or principal, we are of opinion that the life tenants have not presented affirmative evidence of a breach of trust by this fiduciary sufficient to justify the imposition of a surcharge.

We find no merit in the contention of the life tenants that the testator directed the payment to them of all dividends received for the estate, whether such dividends represented principal or income. The provision of Paragraph Third of the will that they should receive "income *and* dividends" will not support the construction they seek to place upon it. In *Boyer's App.*, 224 Pa. 144, upon which they rely, we said (p. 153) : "It is to be presumed that the settlor meant to indicate by the use of the three words, 'dividends,' 'income' and 'profits,' . . . everything in the way of advantage or benefit which might accrue from the stock, *without decreasing the original value of the capital which it represented.*" And, in the present case, the life tenants were entitled only to such portion of the stock dividend as appeared to be income over and above the intact value of the investment.

The order of the court below is affirmed. Costs to be paid out of the estate.