328 A.2d 158
In the Matter of the ESTATE of Morris
ROSENBLUM, Deceased.

PITTSBURGH NATIONAL BANK, Trustee for benefit of
Anna R. Reichman, Herman H. Rosenblum and
Sarah Lucille Helfer.

Appeal of Maurice A. REICHMAN et al.

Supreme Court of Pennsylvania.
Argued Sept. 26, 1973.
Decided Nov. 20, 1974.

202

204

---

John F. Ploeger, Truel & Ploeger, Pittsburgh, Maurice A. Reichman, New York City, for appellant.

Melvin Schwartz, Cooper, Schwartz, Diamond & Reich, Richard B. Tucker, Jr., Tucker, Arensberg & Ferguson, J. Kent Culley, Pittsburgh, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

██ These consolidated appeals come to us from decrees of distribution of trust assets following an accounting by the trustee,[1] and the dismissal of exceptions thereto. Appellants are remaindermen of a series of trusts established by an agreement dated October 9, 1928 between Morris Rosenblum and Fidelity Title and Trust Company, predecessor in interest to Pittsburgh National Bank, appellee. The remaindermen contend that rents from real estate which the trustee treated as an asset of the trusts were erroneously distributed to the life tenants of the trusts. They further allege that they have been denied an adequate opportunity for discovery, and object to the allowance of legal expenses incurred by the trustee as proper charges against the trusts.

### I.

The trust agreement of October 9, 1928 established four trusts; one for the benefit of each of the settlor's three children, Herman Rosenblum, Anna R. Reichman and Sarah L. Helfer, and one for the benefit of the settlor's nephew, Morris Goldstein. Each beneficiary was made life tenant of the trust for his or her benefit. The net income from each trust was to be paid to the life tenant during his or her lifetime, and on the death of the life tenant, the corpus was to be distributed free of trust to his or her descendents, per stirpes. Insurance policies on the life of Morris Rosenblum supplied the original corpus of the trusts. The seventeenth paragraph of the trust agreement provides that

---

1. Appellants are remaindermen of separate trusts. Since each appellant has an interest separate and distinct from the others, separate appeals were necessary, even though exceptions to the three decrees of distribution were dismissed in a single order, and the appeals involve common questions of law and fact. *Schuetz's Estate*, 315 Pa. 105, 172 A. 865 (1934).

"[i]n the event of any increase in the trust fund either by deposit of other policies of insurance or sums of money, or securities, or under the terms of the last will and testament of the Assured, the same shall be held by the Trustee for the benefit of the three children of the Assured, to be held in the following proportions—

| | |
|---|---|
| Herman H. Rosenblum | one-half |
| Anna R. Reichman | one-fourth |
| Sarah Lucille Helfer | one-fourth |

and in this proportion any such increase shall be added to and become part of the trust estates hereinbefore set forth for the said children."

On October 10, 1928, the day following execution of the life insurance trust agreement, Morris Rosenblum executed his will. By the Fourth paragraph of the will, he left his furrier business to two of his children, Herman and Anna, and his nephew, Morris Goldstein, to "be held by the Fidelity Title and Trust Company, as trustee, to carry on the said business . . . for a period of not less than twenty (20) years, unless in the meantime the operation of the business shall become unprofitable, in which event it may be terminated at the discretion of my trustee." The fifth and six paragraphs of the will provide as follows:

"FIFTH: I authorize, empower and direct my executor and trustee to mortgage any real estate of which I may die seized in a sum not to exceed Twenty thousand ($20,000.00) Dollars, if in the opinion of my executor and trustee it shall be wise so to do, for the purpose of securing additional capital for the carrying on of my said business, without, however, any liability on the part of the mortgagee to see to the application of the proceeds.

"I further authorize, empower and direct my said executor and trustee to sell any or all of the real estate of which I may die seized, as and when it is deemed to

the best interests of my estate so to do, at either public or private sale, the same to be done, however, only with the consent of my son, Herman H. Rosenblum, and my daughter, Anna R. Reichman, with full authority in my said executor and trustee to make, execute and deliver deed or deeds therefor, and without necessity on the part of the purchaser to see to the application of the purchase money; *the said real estate and the proceeds of the sale thereof to be added to the principal of a certain trust fund with the Fidelity Title and Trust Company under an agreement dated the ninth day of October, 1928, the same to be held and distributed in accordance with the provisions of said trust agreement.*

"SIXTH: All the rest, residue and remainder of my estate, I give, devise and bequeath to the said Fidelity Title and Trust Company, as trustee, the same to be added to the principal of a certain trust fund created under agreement dated the ninth day of October, 1928, referred to in the preceeding paragraph of this will, the same to be held and distributed by the said trustee in accordance with the provisions of said trust agreement." (Emphasis supplied.)

Morris Rosenblum died on October 12, 1928. The only assets of his probate estate passing to the Fidelity Title and Trust Company (hereinafter "the trustee") under the fifth and sixth paragraphs of the will were two parcels of real estate, *viz.*, a one-third interest in a three-car garage, and a two-story store and apartment building ("the Highland Avenue property"). These two properties have been administered as assets of the life insurance trusts for the benefit of Morris Rosenblum's children in accordance with the seventeenth paragraph of the trust agreement, and net rentals from the properties have been distributed as income to the life tenants.[2] Ad-

2. Since the death of Anna R. Reichman in 1962, her share of rental income from the properties has been distributed to her son, Maurice Reichman, sole remainderman of her trust and one of the

vances from principal to the life beneficiaries, as permitted by the provisions of the life insurance trust agreement, and the purchase of a mortgage on the Highland Avenue property absorbed a substantial portion of the liquid assets of the trusts. In 1969, the tenant of the Highland Avenue property broke its lease and subsequently became insolvent. Efforts to locate a new tenant were unsuccessful, and the trustee was obliged to advance its own funds for payment of taxes, insurance, and maintenance of the property. In May, 1971, the trustee notified the beneficiaries that it was unwilling to make further advances to maintain the Highland Avenue property. Shortly thereafter, on July 13, 1971, appellant Maurice Reichman instituted an action for an accounting in the District Court of the United States for the Western District of Pennsylvania, alleging various acts of neglect and malfeasance on the part of the trustee, and seeking to surcharge the trustee for an amount in excess of seven million dollars.[3] The complaint was ultimately dismissed. In the meantime, the trustee filed its accounts for the three trusts for Morris Rosenblum's children in the orphans' court division on September 3, 1971, and, on September 14, 1971, filed its petitions for distribution.

appellants herein. Appellants Maurice F. Rosenblum and Benita H. Lear are contingent remaindermen of the trusts for Herman H. Rosenblum and Sarah L. Helfer, respectively.

3. Reichman, a New York attorney, invoked federal jurisdiction on the basis of diversity of citizenship of the parties. The district court dismissed the complaint for lack of jurisdiction over the subject matter. The court of appeals ruled that the district court did have jurisdiction, but affirmed the dismissal of the complaint on the basis of the abstention doctrine, remarking: "we rely on the substantial identity of the issues raised in Orphans' Court with those presented in the district court and the special ability of the state court to decide those issues in view of its exclusive state jurisdiction over trusts and estates. We also think that administrative efficiency and convenience would best be served by permitting adjudication in the court having jurisdiction over both plaintiff and his fellow beneficiaries." *Reichman v. Pittsburgh National Bank*, 465 F.2d 16, 18 (3rd Cir. 1972).

## II.

Appellants contend that net rentals from the two properties should have been accumulated for the benefit of appellants, the settlor's grandchildren, instead of being distributed to the life tenants of the trust. They base this contention in part on the theory that the real estate did not pass under the will into the life insurance trusts, but remained in a separate residuary trust established by the sixth paragraph of the will. As we read the will, this theory cannot be reconciled with its plain language. The fifth paragraph of the will empowers the trustee "to sell any or all of the real estate of which I may die seized, as and when it is deemed to the best interests of my estate so to do . . . the said real estate and the proceeds of the sale thereof to be added to the principal of [the life insurance trusts]." According to appellants' theory, it is only the proceeds from an exercise of the trustee's discretionary power of sale which pass into the life insurance trusts under this paragraph of the will. But this interpretation renders superfluous the testator's direction that "said real estate" as well as "the proceeds of the sale thereof" pour over into the life insurance trusts. As we said in *Vandergrift Estate,* 406 Pa. 14, 16, 177 A.2d 432, 438 (1962), "a will must be so construed, if possible, as to give effect to every word employed by the testator and a construction which renders any of the words nugatory and futile must be rejected . . . ". *See also Chambers Estate,* 438 Pa. 22, 263 A.2d 746 (1970); *Benedum Estate,* 427 Pa. 408, 235 A. 2d 129 (1967). The reason for the testator's choice of words is plain. He owned two separate parcels of real estate, and it was natural for him to suppose that his trustee might decide to sell one and not the other. We conclude that the words in the fifth paragraph, "the said real estate and the proceeds of the sale thereof", refer to "all of the real estate of which I may die seized"; and

that the testator's entire real estate holdings passed under that paragraph to the life insurance trusts.

Moreover, if unsold real estate did not pass to the insurance trusts under the fifth paragraph, it would reach the same destination under the terms of the residuary clause in the sixth paragraph. Appellants argue that this clause created a separate residuary trust of real estate. We cannot agree; it is difficult to imagine how Morris Rosenblum could have expressed more plainly his intention that the entire residue of his estate pour over into the life insurance trusts.

■ Appellants also contend that the existence of a separate trust of unsold real estate is implied in the testator's authorization in paragraph Fifth of the will to his "executor and trustee" to mortgage the real estate for the purpose of securing additional capital for the testator's furrier business. It must be conceded that this aspect of Mr. Rosenblum's testamentary scheme might have given rise to some troublesome problems, for the proportional interests of the beneficiaries of the life insurance trusts and of the trust of the business established by the fourth paragraph of the will were not in all respects identical.[4] We cannot, however, infer the existence of a trust where none is expressly provided merely because we think the testator did not arrange his affairs as tidily as he might have. Whatever the drawbacks of

4. Sarah L. Helfer, testator's daughter and a life tenant of one of the life insurance trusts, was not a beneficiary of the business trust. Morris Goldstein, testator's nephew, was bequeathed a three-twentieths share in the business, but received no additions to his life insurance trust under the will. Herman Rosenblum received a three-fifths interest in the business; his life insurance trust received one half of the real estate. Anna R. Reichman received a one-quarter interest in the business, and a one-quarter interest in any additions to the life insurance trusts.

Problems of conflicting interests between various beneficiaries of the two trusts never in fact materialized. No attempt was made to divert proceeds from mortgages of the properties for the benefit of the business, which went into bankruptcy in 1932. *See Rosenblum's Estate*, 82 P.L.J. 337 (Orphans' Ct. Alleg. County 1934).

his testamentary scheme, Morris Rosenblum's will expresses his wishes in plain fashion. The testator clearly intended that all his real estate holdings pass into the corpus of the trusts created for the benefit of his children.

 Appellants argue that even if the properties themselves were properly added to the insurance trusts rather than segregated in a separate trust, the net rentals from the properties should have been capitalized and accumulated for the benefit of the remaindermen of the life insurance trusts. This part of appellants' argument focuses on the testator's direction in the fifth paragraph of the will that "proceeds of the sale [of real estate]" be added to the principal of the life insurance trusts. Their contention is that the use of the word "proceeds" includes rentals prior to sale, and that so long as real estate is unsold, rentals must be added to principal.

Of course, the precise meaning of a word depends on the context in which it is used. In *Haak Estate,* 165 Pa. Super. 180, 67 A.2d 449 (1949), relied on by appellants, the testatrix directed her executrix to sell specific real estate and "divide the net proceeds derived therefrom" among named legatees. The residuary legatee claimed the rents accuring from the real estate prior to its sale under the residuary clause of the will. The court disagreed, and awarded the accrued rents to the legatees entitled to the proceeds of the real estate, remarking:

> "We cannot accept appellant's view that, under this will, the term 'net proceeds' necessarily or by implication excludes accrued rentals. Rather, the phrase 'to divide the net proceeds derived therefrom' could be reasonably interpreted . . . to include the accruing rentals. The word 'therefrom' could as logically refer to the real estate as to the sale." 165 Pa.Super. at 183, 67 A.2d at 451.

In the case before us, the testator spoke not merely of "proceeds derived from real estate", as in *Haak Estate, supra,* but of "proceeds of the sale thereof". The meaning of this phrase is unambiguous. It cannot reasonably be stretched to include rentals accruing prior to sale.

The transfer of the real estate to the life insurance trusts was for the primary benefit of the testator's children, not his grandchildren. Under the trust agreement, additions to the trusts under the settlor's will were to "be held by the Trustee for the benefit of the three children of the Assuréd". Each child was to receive "the net income arising from [his or her] trust fund for and during the term of [his or her] natural life." In general, rents received from realty held in trust are income, and except as otherwise provided by the terms of the trust, they are payable to the beneficiary entitled to income from the trust. Restatement (Second) of Trusts § 233, comment a. The trustee did not err in paying the net rentals from the settlor's real estate to his children, the life tenants of the trusts.

### III.

On October 4, 1971, after the trustee had filed its accounts in the orphans' court division, appellant Reichman contacted the trustee and requested access to all books, documents, correspondence and other papers relating to the trust. This request was refused by the trustee. Shortly thereafter, Reichman filed a petition for depositions and discovery under Rule 4001 et seq. of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix.[5]

5. The Pennsylvania Rules of Civil Procedure relating to pretrial discovery, Rule 4001 et seq., govern proceedings in the orphans' court divisions in the absence of local rules to the contrary. *See* the Orphans' Court Act of 1951, Act of August 10, 1951, P.L. 1163, art. VII, § 742, 20 P.S. § 2080.742, repealed by the Act of June 30, 1972, P.L. 508, No. 164, § 3(a) and substantially re-enacted as part of the Probate, Estates and Fiduciaries Code, Orphans' Court Divisions, 20 Pa. S. § 774, effective July 1, 1972 (1974 pamphlet). To the same effect, *see* Supreme Court Orphans'

The court below declined to act on this application for discovery until objections to the trustee's accounts had been filed. Thereafter, the court approved the taking of all depositions sought by appellants, but limited discovery of documents to those items which appellants could demonstrate were relevant to their objections. See Pa. R.C.P. 4007(a) and 4009.

Appellants protest that this procedure saddled them with an insupportable burden. They contend that they could not pinpoint those items in the trustee's accounts to which objections should be raised until they had inspected all documents relating to the trust. In essence, they argue that, as trust beneficiaries, they are exempt from the normal limitations on pre-trial discovery, and have an unqualified right of access to all such documents in the trustee's possession.

■■ We agree that appellants' right to inspect the records of the trust was unduly restricted. Read together, Rules 4007 and 4009 authorize discovery of "designated tangible things, including documents, papers, books, accounts, letters, photographs and objects," in the "possession, custody or control" of a party, which are "relevant to the subject matter involved in the action and will

Court Rules, § 3, Rule 6 (1968). *See MacKarus Estate*, 431 Pa. 585, 592–594, 246 A.2d 661 (1968); *Doran Estate*, 12 D. & C.2d 167 (Orphans' Court Montgomery County, 1955). The local rules of the Orphans' Court of Allegheny County provided in Rule 13, § 3 that the practice with respect to depositions and discovery was to conform to the practice in the local court of common pleas. These rules were in effect at the time of the proceedings below, and their operation was not affected by the consolidation of the courts brought about by the adoption of Article V of the Constitution of 1968, P.S., effective January 1, 1969, and Section 17 of the Schedule thereto, under which the reconstituted Court of Common Pleas of Allegheny County exercises through its orphans' court division the jurisdiction of the former Orphans' Court of Allegheny County. The power of this Court to prescribe civil procedural rules is subject to the limitation that such rules "shall neither abridge, enlarge nor modify the substantive right of any litigant . . . ." Act of June 21, 1937, P.L. 1982, § 1, 17 P.S. § 61.

substantially aid in the preparation of the pleadings or the preparation or trial of the case." Documents relating to a trust are certainly "relevant to the subject matter" of an audit of the trustee's account, and may "substantially aid in the preparation" of objections to the account. Thus it was proper for appellants to seek discovery of documents relating to the trust before they filed their objections to the trustee's accounts. Indeed, inspection of the trustee's records may be the only means by which a cestui que trust can determine whether objections are necessary.

But unlike an ordinary party to an adversary judicial proceeding, a trust beneficiary is not obliged to show that the requirements of rules 4007 and 4009 have been satisfied in order to obtain access to records in the possession of his trustee. The right of access to trust records is an essential part of a beneficiary's right to complete information concerning the administration of the trust. This right is recognized in section 173 of the Restatement (Second) of Trusts (1959):

> "The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust."

This section is declaratory of the common law of Pennsylvania.[6] It places cestuis que trustent on a differ-

6. The doctrine of disclosure set forth in Section 173 of the Restatement of Trusts (Second) was recognized and applied in the orphans' courts of this Commonwealth long before the adoption in 1935 of the original Restatement by the American Law Institute. *See, e. g., Syfert Estate,* 9 Phila. 320 (Orphans' Ct. Phila. County 1873); *Gordon Estate,* 19 Dist. 1018, 1020 (Orphans' Ct. Lack. County 1910); *Tripp Estate,* 17 Lack.Jur. 270 (Orphans' Ct. Lack. County 1916); *see also Harris v. Silvis,* 86 Pa.Super. 222, 225 (1925). The section has been cited with approval by this Court on several occasions since its adoption. *Wilson v. Board*

ent footing from other litigants who seek discovery of documents under our Rules of Civil Procedure. A beneficiary's right of inspection has an independent source in his property interest in the trust estate, and the right may be exercised irrespective of the pendency of an action or proceeding in court. *Tripp Estate,* 17 Lack.Jur. 270 (Orphans' Ct. Lack. County 1916) ; *Strauss v. Superior Court,* 36 Cal.2d 396, 224 P.2d 726 (1951) ; *see generally* Annot., 118 A.L.R. 269 (1939) ; II A. Scott, The Law of Trusts, § 173 (3d ed. 1967); *Compare Cole v. Wells,* 406 Pa. 81, 177 A.2d 77 (1962).

Of course, a beneficiary's right to inspect trust records, like any other right, must be exercised in good faith and with due regard for the rights of other interested parties. *See* Pa.R.C.P. 4011; *cf. Gelbach Estate,* 11 Pa.Dist. 183 (Orphans' Ct. Phila. County 1902) ; *Harton Estate,* 331 Pa. 507, 522, 1 A.2d 292 (1938). The opinion of Judge Ludlow of the Orphans' Court of Philadelphia County handed down a century ago is still an accurate expression of the law of this Commonwealth: "The trustee evidently labored under the idea that he was not bound to produce his books and accounts, but only to file an account. There was error in this view, for the law is, *not that a trustee is bound to submit to a vexatious and unwarrantable call for books and papers, but that at all reasonable times, in proper places,* the books and accounts should, on call, be submitted to those who have a right to the inspection of them . . . . [S]ubject to the principles above stated, he must give to his co-trustee and the parties interested ample opportunity to look into the condition of the estate." *Syfert Estate,* 9 Phila. 320, 321 (1873) (emphasis supplied) ; *see*

of *Directors of City Trusts,* 324 Pa. 545, 556, 188 A. 588, 594 (1936); *Bard Estate,* 339 Pa. 433, 437, 13 A.2d 711, 713 (1940); *Spring v. Hawkes,* 351 Pa. 602, 610, 41 A.2d 538, 541 (1945); *see also Equitable Trust Co. v. Schwebel,* 32 F.Supp. 241, 243 (E.D. Pa.1940), aff'd mem., 117 F.2d 738 (3d Cir. 1941).

*also Tripp Estate,* 17 Lack.Jur. 270 (Orphans' Ct. Lack. County 1916); *Coberly v. Superior Court,* 231 Cal.App. 2d 685, 42 Cal.Rptr. 64, 68 (1965) (". . . safeguards . . . against abuse of discovery and absence of good cause are available to [a trustee], as to any other litigant.")

In the case at bar, appellant's initial request to inspect the records of the trust during normal business hours at the trustee's place of business was a reasonable one, and there is nothing in the record to suggest that the request was made in bad faith.[7] On remand, the beneficiaries must be permitted, within a reasonable time to be fixed by the court, to inspect all documents in the hands of the trustee pertaining to the trust, after which additional objections to the trustee's accounts may be filed.[8]

In view of this disposition of the case, we need not pass on appellants' contention that the trustee should be denied reimbursement of its legal costs.

The decree is vacated, and the case is remanded for further proceedings consistent with this opinion. Costs to abide the event.

7. It does appear, however, that appellants were somewhat dilatory in pursuing the substantial opportunities for discovery which the auditing judge, in a commendable effort to protect the rights of parties unfamiliar with Pennsylvania procedure, made available to appellants after their initial objections to the trustee's accounts had been filed. If, after our remand of the case, appellants choose to exercise their right to inspect the records of the trust, they must do so promptly, so that this prolonged litigation may be brought to a conclusion.

8. The record reveals that the greater part of the documentary material which was the subject of appellants' petition for discovery was sought in connection with appellants' theory that the testator's real estate formed the corpus of a separate residuary trust. It was appellants' contention that tax returns, mortgage records, correspondence and other documents in the possession of the trustee would demonstrate that the trustee had acknowledged the existence of a separate trust. Lest there be any misunderstanding on this point, we emphasize that we are in complete agreement with the lower court that the existence *vel non* of the separate trust of real estate is purely a question of testamentary intent, derived from the trust instruments. The conduct of the trustee during the administration of the trust has no bearing on this question.