J-A06007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TRUST AGREEMENT ESTABLISHED UNDER AGREEMENT OF SARAH MELLON SCAIFE, DECEASED DATED MAY 9, 1963 | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: STRASSBURGER MCKENNA GUTNICK & GEFSKY | : : : | |
| | : | No. 697 WDA 2021 |

Appeal from the Order Entered May 25, 2021
In the Court of Common Pleas of Allegheny County
Orphans' Court at 02-20-2506

BEFORE:   MURRAY, J., SULLIVAN, J., and COLINS, J.*

MEMORANDUM BY MURRAY, J.:                    **FILED: MAY 23, 2022**

In this collateral appeal pursuant to Pa.R.A.P. 313, we consider whether the fiduciary exception to the attorney-client privilege and attorney work product doctrine, first adopted by the common pleas court in ***Follansbee v. Gerlach***, 56 Pa. D. & C.4th 483 (C.C.P. Allegheny 2002), is contrary to the law in Pennsylvania, following our Supreme Court's plurality decision in ***In re Estate of McAleer***, 248 A.3d 416 (Pa. 2021) (***McAleer II***).[1]

Strassburger McKenna Gutnick & Gefsky (Appellant or Strassburger McKenna), the law firm retained by trustees of the 1963 Trust (Trust)

_____

* Retired Senior Judge assigned to the Superior Court.

[1] This appeal is properly before us pursuant to the collateral order doctrine, Pa.R.A.P. 313.  ***See McAleer II***, 248 A.3d at 425 (deeming discovery order implicating the fiduciary exception to the attorney-client privilege appealable under the collateral order doctrine).

established under the agreement of Sarah Mellon Scaife, deceased, appeals from the orphans' court order granting the motion to compel discovery filed by David Zywiec (Zywiec), the personal representative of the Estate of Jennie K. Scaife (Zywiec and Estate referenced collectively as the Estate). Because we conclude a fiduciary exception is not contrary to Pennsylvania law, we affirm the orphans' court order compelling discovery.

## Factual History

On May 9, 1963, Sarah Mellon Scaife settled the Trust for the benefit of her grandchildren, their issue, their spouses, the spouses of their issue, and charitable organizations. Petition for Adjudication, 6/1/20, Rider to Item 7. From the Trust's inception through March 31, 1984 (the charitable period), the trustees were required to make annual distributions of the Trust's net income to charitable organizations. Trust, 5/9/63, Article II. Any time after the end of the charitable period, the Trust authorized the trustees to create separate trusts for any income beneficiary, any time after the end of the charitable period. Trust, 5/9/63, Article V, § 5.01. After the charitable period, the Trust authorized distribution of net income to the income beneficiaries. *Id.* § 5.02. The Trust defined income beneficiaries as the grandchildren of the donor, their spouses, the issue of grandchildren, spouses of such issue, and (in the trustees' discretion) "Charity." *Id.* §§ 1.07, 4.01.4.

In April 1984, at the end of the charitable period, the Trust began distributing its net income to the only income beneficiaries at that time, Jennie K. Scaife (Jennie) and her brother, David N. Scaife (David). Estate's Objections to Account, 9/21/20, ¶ 3. PNC Bank, N.A. (PNC), became a successor corporate trustee of the Trust in 1993. *Id.* ¶ 6. David married in 1997 and had two children; David's spouse and children also became income beneficiaries. *Id.* ¶ 7. Jennie remained unmarried and childless until her death. *Id.* ¶ 6.

Over the years, the trustees issued equal distributions to David and Jennie. *Id.* ¶ 11. Jennie died from long-term ailments on November 29, 2018, at the age of fifty-five. *Id.* ¶¶ 6, 11. On March 1, 2019, the Estate, through Zywiec, requested the trustees transfer Jennie's beneficial share of the Trust to her Estate. *Id.* In February 2020, in accordance with Jennie's will, Zywiec established the Jennie K. Scaife Charitable Foundation, Inc. (Foundation). Upon learning that trustees did not create a separate trust for Jennie, Zywiec requested documentation regarding the trustees' exercise of discretion when it deemed separate trusts unnecessary. *Id.* ¶ 12.

On April 27, 2020, Zywiec and the Foundation filed a complaint against PNC, as corporate trustee of the Trust, and Matthew A. Groll (Groll), Blaine F. Aikin (Aikin), Frederick G. Wedell, Corbin P. Miller and Laura B. Gutnick (Gutnick), the individual trustees of the Trust (PNC and Individual Trustees collectively referred to as Trustees). Zywiec averred Trustees had breached

their fiduciary duty to Jennie by not creating a separate trust for her benefit. ***See Jennie K. Scaife Charitable Found. v. PNC Bank***, N.A., No. 2:20-cv-617-NR-LPL, 2021 U.S. Dist. LEXIS 41195 (W.D. Pa. Mar. 5, 2021), The federal court ultimately abstained from exercising jurisdiction. ***See id.*** *8-9.

## Trustees' First and Final Account

On June 1, 2020, Trustees filed their First and Final Account of the Trust from March 22, 1994, through December 31, 2019 (Trustees' Account). Trustees' Account, 6/1/20. Trustees additionally filed a Petition for Adjudication, presenting the following issue:

> Whether Trustees not creating a "Separate Trust" for the benefit of beneficiary Jennie K. Scaife before her death on November 29, 2018, constituted a breach of Trustees' fiduciary duties under the Trust Agreement and Pennsylvania law. The [E]state of Ms. Scaife, along with a charitable foundation the [E]state founded, contends that Trustees breached their fiduciary duties and harmed the [E]state (and the foundation) by not exercising their power to create a "Separate Trust" under Article V of the Trust instrument for the benefit of Ms. Scaife before her death. Trustees deny any such breach of fiduciary duty.

Petition for Adjudication, 6/1/20, ¶ 14.

On September 21, 2020, David and his son, David G. Scaife, both income beneficiaries, filed an objection challenging Trustees' assertion that the orphans' court could compel Trustees "to split the Trust" and the Trust could "now be divided." Scaifes' Objection, 9/21/20.

The Estate filed objections to the Account (Estate's Objections) on September 21, 2020. The Estate claimed Trustees had violated their fiduciary

duty to Jennie by: (a) not exercising their discretion and determining whether separate trusts were necessary to protect the income beneficiaries' interests; (b) not acting in good faith, in violation of the Uniform Trust Act ("UTA");[2] and (c) favoring David's interests over those of Jennie. *Id.* ¶ 14 (a)-(c).

PNC and Individual Trustees filed answers and new matter denying they had breached their fiduciary duty to income beneficiaries. Individual Trustees' Answer and New Matter, 10/21/20, ¶ 1; PNC's Answer and New Matter, 10/21/20, ¶ 1. The Trustees explained that in April 2017, Jennie and David did not ask for the termination of the Trust or the creation of separate trusts. Individual Trustees' Answer and New Matter, 10/21/20, ¶ 1; PNC's Answer and New Matter, 10/21/20, ¶ 5. Trustees further denied breaching their fiduciary duties regarding the failure to create separate trusts. Individual Trustees' Answer and New Matter, 10/21/20, ¶ 1; PNC's Answer and New Matter, 10/21/20, ¶ 5.

## Discovery

On October 26, 2020, the Estate filed its first motion to compel production of the following categories of documents:

> (1) Documents spanning the entire Accounting Period and not limited to the 30-month period in 20 Pa.C.S.A. § 7785; (2) PNC's manuals and memoranda concerning its conflict policies; (3) documents concerning the Trust's investments in its affiliates Blackrock and iShares; (4) documents concerning the legal services provided to the Trust by the law firm of Strassburger McKenna … and the appointment of its shareholders E.J.

---

[2] *See* 20 Pa.C.S.A. §§ 7701-7790.3.

> Strassburger [(Strassburger)] and [] Gutnick as trustees; and (5) documents concerning the retention of a payment to Independent Fiduciary Services Consulting Services Management.  As discussed herein, there is no basis for the Trustees to withhold any of these documents—which all concern the administration of the Trust— from the Estate, which is their beneficiary.

First Motion to Compel, 10/26/20, at 2 (unnumbered) (footnote omitted).

On November 5, 2020, the orphans' court entered an order directing Trustees to produce all documents related to the legal services provided by Strassburger McKenna, and the appointment of Strassburger and Gutnick as trustees.  Orphans' Court Order, 11/5/20, at 1-2 (unnumbered).  The orphans' court ordered production of the documents by November 17, 2020, and directed the filing of discovery motions by the close of business on November 19, 2020.  *Id.* at 2 (unnumbered).

The Estate filed a second motion to compel on November 19, 2020.  After a hearing, the orphans' court granted the Second Motion to Compel.  Orphans' Court Order, 12/3/20.

On January 8, 2021, Trustees lodged objections to the Estate's notice of intent to subpoena documents from Strassburger McKenna.  Trustees' objections stated, in full:

> Pursuant to Pennsylvania Rule of Civil Procedure 4009.21(c), trustee PNC Bank, N.A. ("PNC") objects to the proposed subpoena that is attached to these Objections as Exhibit A because it calls for the production of documents protected by the attorney-client privilege, the work product doctrine, and/or other applicable legal privilege or protection.  Production of the categories of documents requested in the proposed subpoena would waive PNC's privilege without its consent.

Individual Trustees Objections, 1/28/21, at 1. PNC's objections included an identical general assertion of privilege and the work product doctrine. *See* PNC's Objections to Notice, 1/28/21, at 2.

On February 23, 2021, the Estate filed a third motion to compel. Relevant to this appeal, the Estate sought production of unredacted versions of previously produced documents, in accordance with the Allegheny County common pleas court's decision in *Follansbee* and the Pennsylvania Superior Court's decision in *In re Estate of McAleer*, 194 A.3d 587 (Pa. Super. 2018) (*McAleer I*). Third Motion to Compel, 2/23/21, ¶ 8. According to the Estate, PNC produced its privilege log identifying 767 documents withheld and/or redacted.[3] The Estate asserted:

> The Estate raised concerns with this privilege log during the recent meet-and-confer. These issues included: logged documents that do not identify an attorney as an author or recipient; the inclusion of documents where an attorney is only one of many people copied on the transmission; not providing enough information to ascertain the subject matter of certain communications; and many of the redactions being heavy-handed and insufficiently justified. Finally, the Estate asserted that under *Follansbee* and *McAleer* [*I*], that PNC was required to produce all documents withheld on privilege grounds that are dated prior to Jennie's death on November 29, 2018.

*Id.*

### The Orphans' Court's Decision

---

[3] The Estate claimed PNC "used a tiny font that made it nearly impossible to review." *Id.*

The orphans' court deferred ruling on the third motion to compel, pending our Supreme Court's decision in **McAleer II**.[4] Following the Supreme Court's plurality decision in **McAleer II** and the submission of briefs by the parties, the orphans' court granted the Estate's third motion to compel. Orphans' Court Order, 5/25/21, at 2 (unnumbered). The orphans' court concluded "a fiduciary exception is not inconsistent with Pennsylvania law." **Id.** The orphans' court directed documents "which heretofore have been withheld from production based upon attorney-client privilege or work-product doctrine, involving the trustee and its beneficiaries be produced no later than 20 days from today's date." **Id.** The orphans' court expressly certified its order for immediate appeal pursuant to 42 Pa.C.S.A. § 702(b) (interlocutory appeals by permission). Appellant timely appealed.[5] Appellant and the orphans' court have complied with Pa.R.A.P. 1925.

Although the orphans' court certified the order for interlocutory appeal by permission, in **McAleer II**, a majority of our Supreme Court agreed that an appeal implicating the same issue constituted an appealable collateral

---

[4] In **McAleer II**, the Supreme Court granted allowance of appeal "to determine whether the attorney-client privilege and the work product doctrine may be invoked by a trustee to prevent the disclosure to a beneficiary of communications between the trustee and counsel pertaining to attorney fees expended from a trust corpus." **McAleer II**, 248 A.3d at 418-19.

[5] Strassburger McKenna filed an appeal of the orphans' court order at 697 WDA 2021. Individual Trustees appealed at 696 WDA 2021. We address those appeals in separate decisions.

order. **See McAleer II**, 248 A.3d at 425. We address Appellant's claims accordingly.

### Appellant's Argument

Appellant has adopted the argument set forth in the brief filed by PNC, in its appeal at 722 WDA 2021,[6] and the argument set forth in the brief filed by the Individual Trustees. Appellant, through PNC's brief, presents the following issue for review:

> Is there an "exception" to Pennsylvania's statutory attorney-client privilege and codified work product doctrine where the client of an attorney is a trustee, and trust beneficiaries demand production of privileged communications and documents?

Appellant's Brief at 4.

Appellant advances three arguments against application of the fiduciary exception to the attorney-client privilege and work product doctrines: (1) no statute recognizes a fiduciary exception, **see id.** at 12-13; (2) Pennsylvania law provides no basis for a fiduciary exception, **see id.** at 20; and (3) most jurisdictions reject a fiduciary exception, **see id.** at 29.

First, Appellant claims there is no statutory exception to the codified attorney-client privilege. **Id.** at 12. According to Appellant, the orphans' court's order "eliminated Pennsylvania's codified privileges between attorneys and their clients, which are vital to trustees carrying out their fiduciary duties."

___

[6] We refer to PNC's appellate brief as "Appellant's Brief."

*Id.* (capitalization omitted). Appellant claims the attorney-client privilege, codified at 42 Pa.C.S.A. § 5928, and the attorney work product doctrine, codified at Pa.R.C.P. 4003.3, 231 Pa. Code § 4003.3, protects without exception such communications and documents from disclosure. *Id.* at 12-13.

Quoting *Pittsburgh History and Landmarks Found. v. Ziegler*, 200 A.3d 58 (Pa. 2019), Appellant argues the privilege "sweeps broader than the literal language of Section 5928: '[I]f open communication is to be facilitated[,] a broader range [of] derivative protections is implicated." Appellant's Brief at 13 (quoting *Ziegler*, 200 A.3d at 80).

> Only with full information from the client can an attorney provide relevant and sound legal advice. A client, however, will not reveal all necessary information to counsel if she fears that the information could later be disclosed. Indeed, we have observed that application of the attorney-client privilege does not actually result in the loss of evidence in the truth-determining process because the client would not have written or uttered the words absent the safeguards of the attorney-client privilege.

*Id.* at 15 (quoting *Ziegler*, 200 A.3d at 80 (quotation marks omitted)).

Regarding the work product doctrine, Appellant asserts, "The same underlying concerns about ensuring that clients receive the best legal advice possible from their attorneys are embodied in the work product doctrine." *Id.* at 15-16. According to Appellant, "[a]llowing counsel to document legal theories without concern of disclosure encourages better representation of clients, which in turn benefits justice." *Id.* at 16 (citation omitted). The work product doctrine, Appellant posits, shields the mental processes of an

attorney, "providing a privileged area within which he can analyze and prepare his client's case." *Id.* (quoting *Gocial v. Indep. Blue Cross*, 827 A.2d 1216, 1222 (Pa. Super. 2003) (citation omitted)).

Appellant emphasizes that beneficiaries likewise benefit from consistent application of the codified attorney-client privilege. *Id.* "Indeed, Pennsylvania law encourages trustees to seek the advice of counsel by allowing trustees to pay for legal expenses from a trust's assets, rather than out of the trustee's own pocket." *Id.* n.1 (citing *Larocca Estate*, 246 A.2d 337, 339 (Pa. 1968), RESTATEMENT (THIRD) OF TRUSTS § 38(2) (2007), and Trust, §§ 7.02(k) and 8.10(c)). According to Appellant,

> There are instances in which co-trustees disagree on the best course of action, or a co-trustee needs advice regarding whether the conduct of another co-trustee complies with the co-trustee's fiduciary duties, perhaps rising to a level requiring removal. Concerns regarding disclosure to beneficiaries under the "fiduciary exception" to privilege, which include potentially tainting the relationship between the co-trustee and beneficiaries, might deter a trustee from seeking such advice—to the ultimate detriment of beneficiaries.

*Id.* at 17. Appellant explains, "the trustees' duty to carry out the intent of the trust settlor oftentimes does not coincide with one or more beneficiary's immediate preferences." *Id.* at 18. Under these circumstances, "[g]uidance from legal counsel can be crucial in circumstances where beneficiaries have differing rights[.]" *Id.*

Second, Appellant argues, "in contrast with the law of privilege, the fiduciary exception has no basis in Pennsylvania law." *Id.* at 20 (capitalization

and quotation marks omitted). Appellant asserts that no Pennsylvania appellate court has adopted the "exception" pronounced by the Honorable R. Stanton Wettick in **Follansbee**. **Id.** Appellant criticizes **Follansbee** as allowing trust beneficiaries to invade privileged communications, without explaining the statutory or legal basis for such an exception. **Id.** at 21. Appellant acknowledges the Supreme Court adopted the Restatement (Second) of Trusts Section 173 in **In re Estate of Rosenblum**, 328 A.2d 158 (Pa. 1974). **Id.** at 23. However, **Follansbee** relied on comment b to Section 173, which the Court did not adopt in **Rosenblum**. **Id.** Further, the parties in **Rosenblum** disputed access to, and disclosure of, records of the trust, not privileged documents or an attorney's work product. **Id.** at 24. Appellant distinguishes **Follansbee** as reflecting the common law in 1959, and not its subsequent development. **Id.** at 24-25.

Third, Appellant argues the basis for the **Follansbee** court's ruling is "no longer good law, and Pennsylvania would be in a very small minority were it to adopt the 'fiduciary exception.'" **Id.** at 29. Appellant directs our attention to jurisdictions which have rejected the fiduciary exception to the attorney-client privilege. **See id.** at 30-35.

## Individual Trustees' Argument on Appeal

Individual Trustees similarly adopted the brief filed by PNC, as summarized above. Individual Trustees submitted an additional appellate

brief arguing, "The court should avoid forcing Trustees to use personal funds to engage separate counsel for the sake of confidentiality." Individual Trustees' Brief at 18. Individual Trustees assert, "A trustee is entitled to be reimbursed out of the trust property, with interest as appropriate, for expenses that were properly incurred in the administration of the trust." ***Id.*** at 19 (quoting 20 Pa.C.S.A. § 7769(A)(1)). According to Individual Trustees, "[t]hose expenses include counsel fees, which will be allowed or disallowed by the Orphans' Court in its discretion." ***Id.*** Individual Trustees claim the plurality's decision in ***McAleer II*** would "drastically penalize[] the trustees" for requesting reimbursement of counsel fees. ***Id.*** at 20.

### **The Estate's Argument**

The Estate argues four grounds for affirmance: (1) the Pennsylvania Superior Court's alternative holding in ***McAleer I*** became binding precedent by operation of law, ***see*** Estate's Brief at 13; (2) the fiduciary exception is established law in Pennsylvania, ***see id.*** at 21; (3) Trustees waived their claim of an exception to the fiduciary exception because it was not raised before the orphans' court, ***see id.*** at 43; and (4) Individual Trustees waived their

argument for prospective application of the fiduciary exception, if recognized, *see id.* at 45.[7]

First, the Estate claims this Court's alternative substantive holding in *McAleer I*,[8] affirmed by operation of law, remains binding precedent. *Id.* at 14-16. The Estate argues, "Because the Justices [in *McAleer*] were affirming, by equal division and by operation of law, this Court's holding applying the fiduciary exception, they did not need to reach the issue of whether the trustee also failed to properly preserve the privilege." *Id.* at 18-19; *see also id.* at 19 ("Because the disclosure would nevertheless result from the competing positions set forth by a majority of the Justices, the lower court's alternative ruling is affirmed by operation of law." (quoting *McAleer II*, 248 A.3d at 419)).

The Estate directs our attention to our unpublished decision in *In re Trust Under Deed of Trust of Scaife*, 225 A.3d 1199 (Pa. Super. 2019) (unpublished memorandum) (*Scaife Trust*). In *Scaife Trust*, this Court, although resolving the appeal on other grounds, favorably cited *Follansbee*

_____

[7] Individual Trustees filed an appeal of the orphans' court's order at No. 696 WDA 2022, which we address in a separate decision.

[8] As we discuss *infra*, in *McAleer I*, this Court quashed the appeal, holding the order was not appealable as a collateral order. *McAleer I*, 194 A.2d at 597. Alternatively, this Court recognized a trustee has a duty to share with beneficiaries complete information regarding administration of a trust. *Id.* Because a majority of our Supreme Court reversed our holding regarding the appealability of the order, the Estate refers to our merits discussion as the alternative holding in *McAleer I*.

- 14 -

as "germane with regard to the Trust management documents." Estate's Brief at 23 (quoting **Scaife Trust**, **supra**, (unpublished memorandum at 5)). The Estate points out Appellant's role as corporate fiduciary in **Scaife Trust**, as well. **Id.** The Estate further lists trial court decisions applying **Follansbee**. **Id.** at 24-26.

The Estate argues recognition of a fiduciary exception is consistent with Section 84 of the Restatement (Third) of the Law Governing Lawyers. **Id.** at 26. Section 84 provides that, in a proceeding in which a fiduciary of a trust is charged with breach of fiduciary duties, a communication is not privileged if it "(a) is relevant to the claimed breach; and (b) was between a trustee and a lawyer or other privileged person … who was retained to advise the trustee concerning the administration of the trust." **Id.** at 26-27 (quoting Restatement (Third) of the Law Governing Lawyers, § 84).

Second, the Estate claims holdings from other jurisdictions do not override the fiduciary exception in Pennsylvania. **Id.** at 28. The Estate points out that the Delaware Chancery Court's decision in **Riggs National Bank of Washington, D.C. v. Zimmer**, 355 A.2d 709 (Del. Ch. 1976), remains binding authority in Delaware, contrary to the assertions of Appellant. Estate's Brief at 30. The Estate asserts, "even the United States Supreme Court has expressly recognized **Riggs** as "the leading American case" on the fiduciary

exception.[9]  *Id.* (quoting *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 171 (2011)).  The Estate references the Delaware Chancery Court's decision in *J.P. Morgan Trust Co. v. Fisher*, C.A. No. 12894-VCL, 2019 Del. Ch. LEXIS 1383 (Del. Ch. Dec. 5, 2019).  Estate's Brief at 34.  In *Fisher*, the chancery court expressly concluded that *Riggs* was not overruled by statute.  *Id.* (citing *Fisher*, 2019 Del. Ch. LEXIS 1383, at *9).

The Estate also disputes the policy arguments made by Appellant as disregarding the trustees' duty to beneficiaries.  *Id.* at 36.

> PNC's final hypothetical—that the trustees may make a decision that benefits some beneficiaries while harming others—is exactly why the fiduciary exception must exist.  PNC rightfully points out that this problem could occur here with respect to the decision to create separate trusts.  But this is precisely the situation where a beneficiary is most in need of full disclosure.  A beneficiary is entitled to know that a decision to favor a different beneficiary over his or her interests satisfied the trustees' sacrosanct duties of impartiality and loyalty to each beneficiary.  The Trustees should not be permitted to use the attorney-client privilege as a shield to hide the reasoning for its most important decisions, especially those that intentionally favor one beneficiary over another.

*Id.* at 38.  The Estate, quoting PNC's brief, claims that in this case, "counsel advised the Trustees that if one beneficiary 'were aware that she could split the trust it's likely she would,' and, in the same breath, recommended the

---

[9] The Estate acknowledges the United States Supreme Court's ultimate conclusion that the government's relationship with a Native American tribe is not similar to a fiduciary relationship between a trustee and a beneficiary.  *Id.* at 31 (citation omitted).

Trustees use their discretionary power to split the Trust as 'leverage against another beneficiary should he ask for a distribution.'" *Id.* at 39.

Importantly, the Estate claims trust counsel attended every formal Trustees' meeting during the 26-year accounting period, and Appellant heavily redacted several Trustees' Meeting Minutes as "privileged." *Id.* The Estate argues these Minutes are official records of the Trust's administration, and are the very documents deemed discoverable by our Supreme Court in *Rosenblum*. *Id.*

The Estate relies on the Supreme Court's plurality opinion in *McAleer II*. *Id.* at 40. The Estate asks this Court to adopt *McAleer*'s stated basis for favoring the fiduciary privilege over that of the attorney-client privilege and the work product doctrine: the critical importance of transparency in a fiduciary relationship. *Id.*

Third, the Estate claims Trustees waived their claim of an exclusion to the fiduciary exception for communications with litigation counsel. *Id.* at 43. The Estate asserts the privilege logs of Strassburger McKenna and Trustees never identified which documents were communications with litigation counsel regarding the dispute with the Estate. *Id.* at 44.

Fourth, the Estate claims Trustees failed to preserve their argument favoring only prospective application of the fiduciary exception. *Id.* at 45. Although the orphans' court requested briefs on the effect of the split decision

- 17 -

in **McAleer II**, Trustees never requested prospective application of the exception. **Id.**

### Income Beneficiaries' Argument

David, Jennie, and David G. Scaife (as representative of David's minor children) (collectively, Income Beneficiaries) filed a joint appellate brief. Income Beneficiaries argue: (1) the fiduciary exception, as recognized in **Follansbee**, strikes the right balance between the rights of fiduciaries and beneficiaries, Income Beneficiaries' Brief at 2; (2) application of the fiduciary exception is consistent with Pennsylvania law, **see id.** at 21; and (3) communications between trustees and trust counsel are not "confidential" communications to which the attorney-client privilege applies, **see id.** at 26.

First, Income Beneficiaries claim trustees have a duty to disclose all information, relevant to trust administration, to the beneficiaries. **Id.** at 2. Income Beneficiaries rely on Section 173 of the Restatement (Second) of Trusts, as adopted by our Supreme Court in **Rosenblum**. **Id.** Income Beneficiaries assert access to these trust records is crucial, and the rationale expressed in **Follansbee** "is sound." **Id.** at 4.

Income Beneficiaries posit, "evaluating the propriety of a trustee's course of conduct requires consideration of the terms of the trust, the nature of the power accorded to the trustee *and all the circumstances surrounding the trust*." **Id.** at 8 (emphasis in original; quoting **In re Scheidmantel**, 868

A.2d 464, 487 (Pa. Super. 2005) (citation omitted)). "To permit a trustee to withhold relevant information would allow the trustee to act in the shadows, sitting as the judge of the trustee's own conduct, without review by the beneficiaries or any court." *Id.* at 10.

Income Beneficiaries argue trust counsel owes derivative duties to trust beneficiaries, requiring disclosure of advice given to guide Trustees' administration of the trust. *Id.*

> Support for these "derivative" duties rests in the fact that the fiduciary estate has been created by the settlor for the exclusive benefit of the beneficiaries, the fiduciary and the lawyer for the fiduciary are compensated by the fiduciary estate, and because the fiduciary traditionally stands in a superior position relative to the beneficiaries, who, in turn, "repose trust and confidence in the lawyer."

*Id.* at 12 (emphasis omitted) (quoting ***Pew Estate***, 16 Fiduc. Rep. 2d 73 (O.C. Montg. 1995) (*en banc*)). Because trust counsel owes these derivative duties to beneficiaries, "the beneficiaries are entitled to obtain communications between trust counsel and the trustee generated in the course of administering the trust." *Id.* at 13.

Income Beneficiaries agree with the Estate that ***Follansbee*** strikes the appropriate balance between the duty of disclosure and a trustee's right to retain counsel for the trustee's own protection. *Id.* Income Beneficiaries assert, "the rationale for the exception was that if the trustee 'obtained the advice [of counsel] using both the authority and the funds of the trust,' then 'the benefit of the advice regarding the administration of the trust ran to the

beneficiaries.'" ***Id.*** at 15 (quoting ***Wachtel v. Health Net. Inc.***, 482 F.3d 225 (3d Cir. 2007)).

Thus, Income Beneficiaries argue for a more limited exception than that adopted by the ***McAleer II*** plurality. ***Id.*** at 17.

> [T]he attorney-client privilege may exist between a trustee and counsel where the interests of the trustee "differ" from or are "adverse" to the interests of the beneficiaries, when claims have been threatened against the trustees, or when litigation has been initiated. In such instances, the trustee (and counsel) are no longer acting in the best interests of the trust and its beneficiaries as to that matter, but rather are acting for the trustee's own protection, and a privilege can and should be recognized.

***Id.*** at 18 (citations omitted).

Second, Income Beneficiaries claim the application of the fiduciary exception is consistent with Pennsylvania law. ***Id.*** at 21. In particular, Income Beneficiaries assert the attorney-client privilege does not protect "facts." ***Id.*** at 24. "[T]he privilege only protects communications from discovery[; f]acts are discoverable, even if discussed in privileged communications." ***Id.*** at 25 (quoting, *inter alia*, ***Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*** 39 A.3d 372, 378 (Pa. Super. 2012)). Even if this Court rejects the fiduciary exception, Income Beneficiaries argue, the "relevant facts and circumstances" disclosed by Trustees to counsel would be discoverable. ***Id.***

Third, Income Beneficiaries argue the communications between Trustees and counsel were not "confidential"; therefore, the privilege does not apply. ***Id.*** at 26. Income Beneficiaries assert that the duty of disclosure to

beneficiaries prevails over the duty of confidentiality between Trustees and trust counsel. *Id.* at 27.

### The Commonwealth's Argument[10]

The Commonwealth supports application of the fiduciary exception on three bases: (1) the "alternative holding" of the Superior Court in *McAleer I* constitutes binding precedent recognizing the exception, *see* Commonwealth's Brief at 16; (2) the fiduciary exception is embedded in Pennsylvania's trust law, which requires the disclosure of information about trust administration to beneficiaries, *see id.* at 20; and (3) the beneficiaries are the "real clients" in cases involving the administration of a trust, *see id.* at 27.

First, the Commonwealth asserts the "alternative holding" expressed by this Court in *McAleer I* is precedential by operation of law. *Id.* at 18. The Commonwealth specifically relies on *McAleer I*'s distinction between "legal consultations and advice obtained in the trustee's fiduciary capacity concerning decisions or actions to be taken in the course of administering the trust," which should be disclosed, and opinions "from counsel retained for the trustee's personal protection," which are privileged. *Id.* at 18-19. Because

---

[10] "The responsibility for public supervision [of charitable trusts] traditionally has been delegated to the attorney general to be performed as an exercise of his *parens patriae* powers." *Coleman Estate*, 317 A.2d 631, 634 (Pa. 1974) (citation omitted).

the alternative holding was not disturbed by the Supreme Court, the Commonwealth asserts it "remains binding precedent." *Id.* at 20.

Second, the Commonwealth argues the fiduciary exception is embedded in Pennsylvania's trust law, which independently requires disclosure about trust administration to beneficiaries. *Id.* The Commonwealth relies on UTA Sections 7772(a) (requiring a trustee to administer a trust solely in the interests of beneficiaries), 7773 (requiring a trustee to act impartially in managing and distributing trust property, where there are two or more beneficiaries), and 7780.3(a) (imposing a duty to inform a beneficiary of information regarding the trust's administration). *Id.* at 20-21. The Commonwealth points out that a majority of the *McAleer II* Court recognized a court's authority to determine whether the fiduciary exception exists. *Id.* at 23.

Third, the Commonwealth argues that beneficiaries are the "real clients" in cases involving trust administration. *Id.* at 27. The Commonwealth also advances the *Riggs* rationale that a trusts' beneficiaries are the "real clients" of the attorney. *Id.* at 28. The Commonwealth disputes Trustees' presumption that they are the "client" in the relationship. *Id.* at 28-29.

## Standards of Review

Our scope of review in an appeal from an orphans' court's decision is limited. When reviewing the orphans' court's decision, we must determine

whether the record is free from legal error and the orphans' court's factual findings are supported by the evidence. ***In re Estate of Angle***, 777 A.2d 114, 122 (Pa. Super. 2001).

The application of the attorney-client privilege and the work product doctrine are questions of law over which our standard of review is *de novo* and our scope of review is plenary. ***Bousamra v. Excela Health***, 210 A.3d 967, 973 (Pa. 2019).

## The Fiduciary Duty of a Trustee

By statute, a trustee's basic fiduciary duty is to administer the trust: "Upon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its provisions and purposes and the interests of the beneficiaries and in accordance with applicable law." 20 Pa.C.S.A. § 7771.

> If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing and distributing the trust property, giving due regard to the beneficiaries' respective interests in light of the purposes of the trust. The duty to act impartially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably in light of the purposes of the trust.

20 Pa.C.S.A. § 7773.

> By its nature a trust involves property transferred to one person, the trustee, to manage for the benefit of another, the beneficiary. Because the trustee stands in a fiduciary relationship to the beneficiary, the trustee is obligated to manage the property in the interests of the beneficiary, and not himself.

*In re Tr. under Will of Ashton*, 260 A.3d 81, 90 (Pa. 2021); *see also* 20 Pa.C.S.A. § 7772(a) ("A trustee shall administer the trust solely in the interests of the beneficiaries."). A fiduciary duty "is the highest duty implied by law." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819-20 (Pa. 2017). A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information. *Id.*

Pertinently, our General Assembly has directed: "**A trustee shall promptly respond to a reasonable request by … a beneficiary of an irrevocable trust for information related to the trust's administration.**" 20 Pa.C.S.A. § 7780.3(a) (emphasis added). The Comment to Section 7780.3 explains:

> [Uniform Trust Code] § 813 has been entirely rewritten in order to provide the trustee with a road map describing when and what information the trustee must communicate to the trust's beneficiaries. It is an effort to balance the settlor's likely expectation that the trust relationship will remain substantially private during the settlor's lifetime, like a will, and the reality that a beneficiary cannot protect an interest in the trust without knowledge of the trust's provisions and operations….

*Id.* Comment.

In *Rosenblum*, our Supreme Court adopted Section 173 of the Restatement (Second) of Trusts (1959) as "declaratory of the common law of Pennsylvania." *Rosenblum*, 328 A.2d at 164. In that case, in support of objections to a trust account, beneficiaries requested all trust documents; the trustee refused, claiming the request was overbroad. *Id.* at 163-64. The trial

court granted "limited discovery of documents to those items which appellants could demonstrate were relevant to their objections." *Id.* at 164.  On appeal, our Supreme Court reversed, concluding "[t]he right of access to trust records is an essential part of a beneficiary's right to complete information concerning the administration of the trust." *Id.*  As adopted by *Rosenblum*, Section 173 declares:

> The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

Restatement (Second) of Trusts, § 173 (1959).  This duty

> places *cestuis que trustent* on a different footing from other litigants who seek discovery of documents under our Rules of Civil Procedure.  A beneficiary's right of inspection has an independent source in his property interest in the trust estate, and the right may be exercised irrespective of the pendency of an action or proceeding in court.

*Rosenblum*, 328 A.2d at 165 (quotation marks omitted).

## The Attorney-Client Privilege

In Pennsylvania, the attorney-client privilege is codified in our Judicial Code:

> In a civil matter, counsel shall not be competent or permitted to testify to **confidential communications** made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928 (emphasis added). The codification of the privilege is essentially "a restatement of the common law privilege and its attendant case law interpretations." **Bousamra**, 210 A.3d at 982 (citation omitted).

We recognize "that evidentiary privileges are not favored." **Id.** at 975. "Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." **Commonwealth v. Stewart**, 690 A.2d 195, 197 (Pa. 1997). Courts should permit assertion of an evidentiary privilege "only to the very limited extent that … excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." **Bousamra**, 210 A.3d at 975.

Because it "has the effect of withholding relevant information from the factfinder," courts construe the attorney-client privilege narrowly to "appl[y] only where necessary to achieve its purpose." **McAleer II**, 248 A.3d at 425-26 (quoting **Fisher v. United States**, 425 U.S. 391, 403 (1976)). As the plurality in **McAleer II** explained, "Where the interests protected by the privilege conflict with weightier obligations, the former must yield to the latter." **Id.** at 426.

Courts have recognized exceptions to the codified attorney-client privilege when (1) the communication takes place in the presence of a third person or the adverse party; (2) the attorney represents both parties to the transaction -- in disputes between the parties *inter se*; and (3) the attorney

- 26 -

is rebutting the client's attack on his integrity or professional competence. ***Loutzenhiser v. Doddo***, 260 A.2d 745, 748 (Pa. 1970).

## **The Work Product Doctrine**

The United States Supreme Court has referred to the work product doctrine as a "qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" ***United States v. Nobles***, 422 U.S. 225, 237-38 (1975) (citation omitted). The privilege emanating from the work product doctrine is codified in Pennsylvania Rule of Civil Procedure 4003.3:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. **The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories.** With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Pa.R.C.P. 4003.3 (emphasis added). The explanatory comment clarifies the scope of the Rule:

> The essential purpose of the Rule is to keep the files of counsel free from examination **by the opponent** …. Documents, otherwise subject to discovery, cannot be immunized by depositing them in the lawyer's file. The Rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental

impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more.

*Id.* (Explanatory Comment-1978) (emphasis added).

### The Fiduciary Exception to the Attorney-Client Privilege And the Work Product Doctrine

In this case, we are asked to balance the attorney-client privilege, codified at 42 Pa.C.S.A. § 5928, and the work product doctrine, codified at Pa.R.C.P. 4003.3, with a trustee's duty to inform beneficiaries regarding the trust's administration, codified at 20 Pa.C.S.A. § 7780.3(a).

In *Follansbee*, the Allegheny County Court of Common Pleas addressed whether there existed a fiduciary exception to the attorney-client privilege, where the trust beneficiaries (plaintiffs) filed a declaratory judgment action against counsel for a trust. *Follansbee*, 56 Pa. D. & C.4th at 485. Plaintiffs alleged counsel had interpreted the trust in prior orphans' court proceedings. *Id.* Counsel, after undertaking representation of another trust beneficiary, prepared a memorandum interpreting the trust contrary to its prior interpretations and favorable to their client beneficiary. *Id.* Plaintiffs filed a declaratory judgment action based on counsel's new interpretation of the trust. *Id.* Without disclosing their conflict of interest, counsel induced the trustee, PNC, to claim stakeholder status in the litigation. *Id.*

During discovery, plaintiffs subpoenaed communications from PNC's legal department, and a law firm representing PNC, to PNC's employees

administering the trust. *Id.* 486. At the time the documents were created, no litigation was indicated or pending. *Id.* PNC claimed, "the attorney-client privilege applies to communications between a fiduciary and its counsel." *Id.* The plaintiffs countered that PNC, as fiduciary and trustee, could not claim attorney-client privilege as to matters affecting the trust. *Id.*

Ultimately, the trial court upheld the beneficiaries' right to documents related to the trust's administration. *Id.* at 491. The trial court relied on *Rosenblum*'s adoption of Restatement Section 173 as declaratory of the common law of Pennsylvania. *Id.* at 490-91. The trial court explained:

> "A beneficiary's right of inspection has an independent source in his property interest in the trust estate, and the right may be exercised irrespective of the pendency of an action or proceeding in court." []
>
> In summary, the trustee cannot withhold from any beneficiary documents regarding the management of the trust, including opinions of counsel procured by the trustee to guide the trustee in the administration of the trust, because trust law imposes a duty to make these documents available to the beneficiaries.

*Follansbee*, 56 Pa. D. & C.4th at 491 (quoting *Rosenblum*, 328 A.2d at 165).

In *McAleer I*, this Court was asked to adopt a fiduciary exception to the attorney-client privilege and work product doctrine. *McAleer I*, 248 A.3d at 591. William McAleer (McAleer) and his step-siblings were beneficiaries of a revocable living trust established by William K. McAleer (William), their father. *Id.* at 590. After William died, issues pertaining to the trust's administration arose. *Id.* As a result, the trustee, a co-beneficiary, retained the services of two law firms. We explained:

On March 17, 2014, [trustee] filed a first and partial account relating to the administration of the Trust. [Beneficiaries] filed objections to the first and partial account filed by [trustee]. [Beneficiaries] also sought disclosure of information pertaining to two bank accounts, and [trustee] retained K&L Gates to respond. On March 30, 2016, the trial court dismissed [beneficiaries'] objections with prejudice.

On August 31, 2016, [trustee] filed a Second and Final Accounting. On November 14, 2016, [beneficiaries] filed objections claiming that [trustee] paid expenses in the administration of the Trust that were unreasonable, including excessive trustee and attorney fees. On March 2, 2017, [beneficiaries] served a request for production of documents including billing statements for all trustee fees and attorney fees. On April 12, 2017, [trustee] produced substantially redacted attorney invoices from both law firms.

*Id.* at 590. Beneficiaries thereafter filed a motion to compel production of unredacted copies of the invoices. *Id.* at 591. The trial court granted the motion. *Id.* The trustee produced the unredacted trustee invoices but appealed the production of counsel's invoices. *Id.*

On appeal, the *McAleer I* Court issued two rulings. First, we deemed the trial court's order interlocutory, and not appealable as a collateral order. *Id.* at 597. In an alternative holding, this Court concluded, "under the law as presented in the Restatement (Third) of Trusts and our Supreme Court's ruling in [] *Rosenblum*, [the trustee] has a duty to share with Appellees, as beneficiaries, complete information concerning the administration of the Trust." *Id.*

In support of our alternative holding, we relied on Restatement (Third) of Trusts Section 82, comment f, which provides: "A trustee is privileged to

refrain from disclosing to beneficiaries or co-trustees opinions obtained from, and other communications with, counsel retained for the trustee's personal protection in the course, or in anticipation, of litigation (e.g., for surcharge or removal)." *Id.* (quoting Restatement (Third) of Trusts § 83, cmt. f (2012)).

> [Trustee] neither argued nor presented evidence to establish that the redacted information pertained to communications from counsel retained for [the trustees'] personal protection in the course of litigation. Accordingly, there is no evidence that the information qualifies as privileged under comment f to the Restatement (Third) of Trusts. Hence, we are left to conclude that the information contained in the attorney invoices qualifies as communications subject to the general principle entitling a beneficiary to information reasonably necessary to the prevention or redress of a breach of trust or otherwise to the enforcement of the beneficiary's rights under the trust. For this reason as well, [trustee] cannot invoke the protections of the attorney-client privilege.

*Id.*

On allowance of appeal, a majority of the Pennsylvania Supreme Court reversed our conclusion that the underlying order was interlocutory and not appealable. *McAleer II*, 248 A.3d at 425. However, only a plurality of the Supreme Court agreed on whether a fiduciary exception to the attorney-client privilege and work product doctrine existed in Pennsylvania. *See id.* Consequently, the Supreme Court affirmed this Court's alternative holding by operation of law. *See id.* at 419.

The *McAleer II* plurality, after extensively reviewing the history of the attorney-client privilege and fiduciary exception, would "reaffirm" the core holding in *Rosenblum*:

[W]e would hold that, **where legal counsel is procured by a trustee utilizing funds originating from a trust corpus, the beneficiaries of that trust are entitled to examine the contents of communications between the trustee and counsel, including billing statements and the like.** That examination necessarily includes reviewing the contents of invoices in order to determine precisely what was procured with trust funds where the reasonableness of costs is at issue. The attorney-client privilege and work product doctrine cannot shield those disclosures in this Commonwealth. **To hold otherwise would enable fiduciaries to weaponize trust assets reserved for beneficiaries against those very beneficiaries in litigation over the propriety of trust management.** Since those same beneficiaries simultaneously would be obliged to foot their own legal bills, they would, in essence, be paying for both parties' lawyers. That result is untenable, particularly in a case such as this, where Trustee also is a co-beneficiary of the trust established by his late father for the benefit of Trustee and his step-sibling.

*Id.* at 436 (emphasis added).

## A Fiduciary Exception is Consistent with Pennsylvania Law

Consistent with *Follansbee*, *McAleer I* and *McAleer II*, we conclude a fiduciary exception to the attorney-client privilege is consistent with Pennsylvania law. Although the attorney-client privilege is codified, so too is a trustee's duty to inform beneficiaries regarding a trust's administration. *See* 42 Pa.C.S.A. § 5928; 20 Pa.C.S.A. § 7780.3(a). As codified by our General Assembly, interpreted by a majority of our Supreme Court in *Rosenblum*, and applied in *McAleer I*'s alternative holding and the common pleas court in *Follansbee*:

A trustee cannot withhold from any beneficiary documents regarding the management of the trust, including opinions of

counsel procured by the trustee to guide the trustee in the administration of the trust, because trust law imposes a duty to make these documents available to the beneficiaries.

*Follansbee*, 56 Pa. D. & C.4th at 491 (quoting *Rosenblum*, 328 A.2d at 165).

Here, unlike *McAleer II*, we find no support for conditioning the fiduciary exception on whether the trust paid counsel fees. The Pennsylvania Rules of Professional Conduct recognize that someone other than a client may pay an attorney's fee. *See* Pa.R.P.C. 5.4(c) ("A lawyer shall not permit a person who recommends, employs **or pays** the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services." (emphasis added)). While a trust's payment of counsel fees may provide evidentiary support for the fiduciary exception, it is not dispositive. *See* 20 Pa.C.S.A. § 7769(a)(1) (entitling a trustee to reimbursement of expenses "properly incurred in the administration of the trust."). The trustee's duty is to disclose "any beneficiary documents **regarding the management of the trust**, including opinions of counsel procured by the trustee to guide the trustee in the administration of the trust[.]" *Follansbee*, 56 Pa. D. & C.4th at 491.

Consistent with the legal authority discussed above, a trustee is privileged from disclosing to beneficiaries or co-trustees' opinions obtained from, and other communications with, counsel retained for the trustee's personal protection **in the course, or in anticipation, of litigation**. *See* *McAleer I*, 194 A.3d at 597. The balancing of interests affords the greatest

protection to beneficiaries, trustees and counsel. In so holding, we acknowledge the requested documents in this case pertain to the accounting period from March 22, 1994, through December 31, 2019. *See* Trustees' Account, 6/1/20. Our review discloses no litigation pending against trustees during the accounting period.

Finally, our holding is not restricted only to prospective application. The Pennsylvania Supreme Court explained,

> the United States Constitution and the Pennsylvania Constitution neither mandate nor preclude a retroactive application of a new decision. Normally, we apply a new decision to cases pending on appeal at the time of the decision. However, a sweeping rule of retroactive application is not justified. Retroactive application is a matter of judicial discretion and must be exercised on a case-by-case basis.

*Christy v. Cranberry Volunteer Ambulance Corps, Inc.*, 856 A.2d 43, 51 (Pa. 2004) (citations omitted) (quoting *Cleveland v. Johns-Manville Corp.*, 690 A.2d 1146, 1151-52 (Pa. 1997)). In this case, our interpretation of the fiduciary exception is consistent with Pennsylvania law, and thus a prospective only application is not warranted. *Christy*, *supra*.

In conclusion, we affirm the orphans' court's order compelling discovery based on a fiduciary exception to the attorney-client privilege. *See* Orphans' Court Order, 6/3/21, at 2 (unnumbered).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/23/2022</u>