J-A15006-25
J-A15007-25

2025 PA Super 254

IN RE: FIRST AND PARTIAL ACCOUNT OF GERALD L. HEMPT, TRUSTEE FOR THE MAX C. HEMPT QTIP TRUST

:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: GERALD L. HEMPT

:
:
:
:

No. 1340 MDA 2024

Appeal from the Order Entered September 6, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 21-12-1337


IN RE: FIRST AND PARTIAL ACCOUNT OF GERALD L. HEMPT, CO-ADMINISTRATOR FOR THE ESTATE OF JEAN D. HEMPT

:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: GERALD L. HEMPT

:
:
:

No. 1341 MDA 2024

Appeal from the Order Entered September 6, 2024
In the Court of Common Pleas of Cumberland County Orphans' Court at
No(s): 21-16-1246


BEFORE:  BOWES, J., STABILE, J., and STEVENS, P.J.E.[*]

OPINION BY BOWES, J.:                    **FILED: NOVEMBER 13, 2025**

Gerald L. Hempt ("Trustee") appeals from the order that, *inter alia*,

compelled him to disclose attorney-client communications and work product

---

[*] Former Justice specially assigned to the Superior Court.

in the above-captioned proceedings.[1]  In particular, he asks us to determine whether the fiduciary exception to the attorney-client privilege and the work product doctrine requires him to disclose otherwise-privileged materials pertaining to litigation he initiated on behalf of the trust to recover a debt allegedly owed to it by a beneficiary.  Concluding that the fiduciary exception does not apply to that information, we affirm in part, reverse in part, and remand the cases for further proceedings consistent with this opinion.

Trustee is the son of Max C. Hempt ("Max") and the nephew of Jean D. Hempt ("Jean").  Trustee is now the sole trustee of a trust Max established in 1987 ("the Trust"), and is co-administrator of Jean's estate ("the Estate") along with Appellee W. Robert Mark ("Co-Administrator").  Appellee Max J. Hempt ("Objector"), the grandson of Max and grandnephew of Jean, is among the various beneficiaries of the Trust and the Estate.

In December 2021, Trustee initiated a civil action ("the Civil Action") on behalf of the Trust against Objector alleging the following in pertinent part. Upon the death of Max's wife Martha Hempt ("Martha") in 2016, Objector became entitled to receive shares of stock in Hempt Bros. Inc. ("HBI"), subject

---

[1] This Court denied a motion to consolidate the appeals without prejudice for this panel to elect a joint disposition.  *See* Order, 3/3/25.  The parties thus filed separate briefs for each appeal.  In citing the briefs or certified record, we designate whether the document was filed in the Trust or Estate case in a parenthetical.  However, the appealed-from order, as well as the Pa.R.A.P. 1925 opinion of the orphans' court, were identical in both cases and thus citations to neither of those shall bear a case-specific designation.

to his payment of the applicable taxes. Objector demanded immediate distribution of his shares, but Trustee was unwilling to do so until the value of the stock was calculated and Objector's share of the taxes deducted. The parties reached a Receipt, Release, and Indemnification Agreement ("the Agreement") in 2017, by which Objector, *inter alia*, acknowledged his obligation to pay his portion of the taxes for the HBI shares and to indemnify Trustee, individually and in his capacity as a trustee, for any such sums expended. The Trust ultimately paid over $1 million in taxes on Objector's shares, but he refused to reimburse the Trust. Consequently, Trustee stated a claim for breach of the Agreement.

Objector responded to the complaint with an answer, new matter, and counterclaim. Therein, he denied that the Trust instrument required him, rather than Martha's estate, to pay the taxes on the HBI shares, and alleged that her estate had already paid them such that Objector had no duty to indemnify the Trust or Trustee. Objector further claimed that Trustee prematurely transferred some of the HBI shares to himself in 2012 prior to Martha's death to avoid paying taxes thereupon, and had improper reasons for not promptly distributing Objector's shares to him. In his counterclaim, Objector demanded a full accounting by Trustee of his management of the Trust and, if that revealed any violations of his fiduciary duties, that Trustee be removed and surcharged.

Trustee filed a reply denying wrongdoing, alleging that Objector consented to the 2012 distribution and had the opportunity to receive the shares during Martha's lifetime but had declined. Trustee additionally pled that the request for an accounting, and the allegations of breach of fiduciary duty, were within the exclusive jurisdiction of the orphans' court and were thus improperly raised in the Civil Action. By order of November 1, 2023, the court transferred Objector's counterclaim to the orphans' court.

On March 12, 2024, through attorneys Lindsey M. Cook and Kevin S. Koscil of Barley Snyder LLP, Trustee filed in the orphans' court: (1) a first and partial account of the Trust, (2) a first and partial account of the Estate, and (3) a petition for adjudication and statement of proposed distribution of the Estate. Among the disbursements listed in both accounts were legal fees paid to McNees, Wallace & Nurick, LLC, between 2001 and 2023. Objector filed objections to both accounts. In an order captioned under both the Trust and the Estate docket numbers, the orphans' court appointed a master to address the objections and related discovery requests.

Objector served interrogatories and requests for production of documents upon Trustee in both matters, and in each Trustee responded with objections. Relevant to this appeal, Trustee raised attorney-client and/or work product privileges in response to the following discovery requests in the Trust case:

5.     State whether, during the applicable time period, [Trustee] received the advice, counsel, guidance, or assistance of any other person, including but not limited to professionals such as lawyers, accountants, real estate agents, and appraisers. In the event [Trustee] did receive advice, identify the person who provided such advice and state what the advice was. In your answer, identify all communications, whether oral or written, between [Trustee] and those individuals.

6.     State whether you made any report, written or oral, of your administration of the Trust, the date when you made such report, the identity of the person to whom the report was made, and provide the report.

. . . .

9.     Identify all written and oral communications between you or anyone on your behalf and any attorney or administrative staff person from McNees, Wallace & Nurick, LLC, regarding the filing of an account for the Trust.

. . . .

14.    In Schedule "C" of your account, you identify multiple disbursements, presumably for professional services, including but not limited to disbursements that are the subject of [certain paragraphs] of [Objector's] Objections. Attached hereto as Exhibit A is a highlighted copy of Schedule "C", which identifies each of those disbursements. With respect to each of the highlighted disbursements, state the following:

    i.      Who performed the services;

    j.      The detailed purpose and nature of the services;

    k.      Whether the services were performed on behalf of the Trust;

    l.      How the services were in the best interest of the Trust and its beneficiaries;

    m.    Identify all invoices and billing statements that support each of the disbursements;

n. Identify all communications, written or oral, between you and any professional that performed the services that relate to each disbursement.

. . . .

8. Produce any and all documents that Barley Snyder obtained from McNees, Wallace & Nurick, LLC, as described in Attorney Lindsey Cook's letter to [the master] dated May 6, 2024.

9. Produce any and all documents that Attorney Kevin Koscil actually utilized when preparing the account. . . .

10. In the event that [Trustee], in his function as Trustee of the Trust, received the advice, counsel, guidance, or assistance of any other person, as identified in Interrogatory No. 5, produce any and all documents that reflect, discuss, or describe any retention agreements or engagement letters with those individuals. Include in your response all written communications made between [Trustee] and those individuals.

. . . .

13. Produce [any] and all documents that evidence, pertain to, reflect, discuss, or describe written communications between you or anyone on your behalf and any attorney or administrative staff person from McNees, Wallace & Nurick, LLC, regarding the filing of an account for the Trust, as identified in your answer to Interrogatory No. 9.

Interrogatories (Trust), 5/8/24, at 6-10 (cleaned up); Request for Production of Documents (Trust), 5/8/24, at 8-9 (cleaned up). Similar requests were made and objected to in the Estate case. *See* Interrogatories (Estate), 5/8/24, at 5-6; Request for Production of Documents (Estate), 5/8/24, at 6-7.

Deeming this Court's decision in ***In re: Trust Established Under Agreement of Sarah Mellon Scaife, Deceased Dated May 9, 1963***, 276 A.3d 776 (Pa.Super. 2022) ("***Scaife***"), to be directly on point, the master concluded that the communications in question fell within the fiduciary exception to the attorney-client privilege recognized in that case. Accordingly, the master's report, filed in both the Trust and Estate cases, included the following:

> [T]he Master recommends that all objections on the basis of the attorney-client privilege and work product doctrine must be denied and Trustee . . . must be required to disclose all documents relating to administration of the Trust and the Estate, including opinions of counsel procured by Trustee . . . for guidance in administration of the Trust and the Estate and excepting only opinions of counsel obtained for the personal protection of Trustee . . . in the course, or in anticipation, of litigation.

Master's Initial Report on Discovery Issues, 7/31/24, at 12-13.

The orphans' court agreed with the master's assessment. Therefore, it entered in both cases the order at issue in this appeal which provided, in relevant part, as follows as to the Trust:

> Trustee's objections on the basis of the attorney[-]client privilege and work product doctrine are denied, and Trustee is directed to disclose all documents relating to administration of the Trust, including opinions of counsel procured by Trustee for guidance in administration of the Trust and excepting only opinions of counsel obtained for the personal protection of Trustee in the course or in anticipation of litigation. If Trustee maintains that any opinions of counsel were obtained for his personal protection in the course or in anticipation of litigation, he is directed to produce sufficient facts to support application of the attorney[-]client privilege or work product doctrine in the form of a privilege log specifying, as follows:

(a)   from whom the opinions were obtained;

(b)   when each opinion was obtained;

(c)   to what ongoing or anticipated litigation each opinion pertained;

(d)   when payment was made for each opinion;

(e)   the owner of the account from which each opinion was paid; and

(f)   the amount that was paid for each opinion.

Order, 9/6/24, at ¶ 3.  The order provided the same as to the discovery in the Estate case.  *Id*. at ¶ 8.

Trustee filed timely notices of appeal at both dockets, and he and the orphans' court complied with their respective obligations pursuant to Pa.R.A.P. 1925.  Trustee presents the following question for our review:  "Whether the [orphans'] court erred in denying the objections based on the attorney-client privilege and work product doctrine and directing disclosure of privileged communications and documents to an adverse party involved in active litigation with the Trust?"  Trustee's brief (Trust) at 5.[2]

We begin by examining the legal principles applicable to Trustee's claim. "The application of the attorney-client privilege and the work product doctrine

_____

[2] In his brief for the Estate case, Trustee states the question thusly:  "Whether the [orphans'] court erred in denying the objections based on the attorney-client privilege and work product doctrine and directing disclosure of privileged communications and documents to an adverse party involved in active litigation with a related entity?"  Trustee's brief (Estate) at 5.

- 8 -

are questions of law over which our standard of review is *de novo* and our scope of review is plenary." ***CLL Acad., Inc. v. Acad. House Council***, 231 A.3d 884, 888 (Pa.Super. 2020).

Our Supreme Court has made it plain "that evidentiary privileges are not favored." ***BouSamra v. Excela Health***, 210 A.3d 967, 975 (Pa. 2019) (cleaned up). They are observed "only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." ***Id***. (cleaned up).

Nevertheless, our High Court has acknowledged that "[i]It is beyond peradventure that Pennsylvania law protects the attorney-client privilege and recognizes it as the most revered of the common law privileges." ***Commonwealth v. Flor***, 136 A.3d 150, 158 (Pa. 2016) (cleaned up).

> [While t]he attorney-client privilege is derived from the common law, [it] is also codified at 42 Pa.C.S. § 5928, which states: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." . . . The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client. Since the purpose of the attorney-client privilege is to create an atmosphere that will encourage confidence and dialogue between attorney and client, the privilege is founded upon a policy extrinsic to the protection of the fact-finding process. The actual beneficiary of this policy is not only the client but also the justice system, which depends on frank and open client-attorney communication.

*Yocabet v. UPMC Presbyterian*, 119 A.3d 1012, 1027 (Pa.Super. 2015) (cleaned up).

The work product doctrine is recognized by Pa.R.Civ.P. 4003.3, which excepts from discovery "the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." This privilege is not founded upon fostering candor through the promise of confidentiality, but rather to prevent the fruits of the attorney's labors from being employed against the client:

> The purpose of the work product doctrine is to protect the mental impressions and processes of an attorney acting on behalf of a client, regardless of whether the work product was prepared in anticipation of litigation. Work product protection provides a privileged area within which an attorney can analyze and prepare a client's case by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*BouSamra*, 210 A.3d at 976–77 (cleaned up).

Neither privilege is absolute. For example, a client can waive the attorney-client privilege by divulging the communications to a third party. *See King v. Kappa Sigma Fraternity*, 331 A.3d 695, 701 (Pa.Super. 2025). Additionally, "[a] party waives the attorney-client privilege by asserting a claim, defense or argument that places the attorney's communications or actions in issue or attempts to prove a claim or defense by reference to privileged material." *Carlino E. Brandywine, L.P. v. Brandywine Vill. Associates*, 301 A.3d 470, 479 (Pa.Super. 2023). Meanwhile, work product protections are waived not by disclosure to any third party, but "when the

work product is shared with an adversary, or disclosed in a manner which significantly increases the likelihood that an adversary or anticipated adversary will obtain it." ***Perelman v. Raymond G. Perelman Revocable Tr.***, 259 A.3d 1000, 1011 (Pa.Super. 2021) (cleaned up).

Additionally, and pertinent to this appeal, Pennsylvania is among the states that have adopted what is known as the fiduciary exception to the attorney-client privilege and work product doctrine.[3]  The exception "is based on the idea that a communication between an attorney and a client is not privileged as to those to whom the client owes a fiduciary duty."  47 A.L.R.6th 255 (originally published in 2009).  It was first recognized in our Commonwealth by the Honorable R. Stanton Wettick, Jr., in ***Follansbee v. Gerlach***, 56 Pa. D. & C.4th 483 (Allegheny C.C.P. 2002).  Therein, Judge Wettick succinctly summarized other jurisdictions' rulings as follows:

> The case law holds that legal advice obtained by a trustee, where its interests differ from the interests of the beneficiaries, is

---

[3] It is axiomatic that a trustee is a fiduciary who "shall administer the trust solely in the interests of the beneficiaries."  20 Pa.C.S. § 7772(a).  The Pennsylvania Supreme Court has recognized, with reference to the Restatements of Trusts, that "[a]n executor is a fiduciary no less than is a trustee[.]"  ***In re Noonan's Estate***, 63 A.2d 80, 83 (Pa. 1949) (applying provisions of the Restatement of Trusts to evaluate conduct of personal representative of estate).  ***See also In re McCrea's Estate***, 380 A.2d 773, 775-76 (Pa. 1977) (invoking the Restatement (Second) of Trusts in discussing the duties of an executor).  However, we have also acknowledged that "the respective fiduciary capacities of executor and trustee are legally distinct[.]"  ***Matter of Estate of Campbell***, 692 A.2d 1098, 1103 (Pa.Super. 1997).  Nonetheless, because the parties make no arguments that the exception has varying scope or force in the different fiduciary contexts, we treat the exception identically in both the Trust case and the Estate case.

protected by the attorney-client privilege. Most courts [that have adopted the exception] reach the opposite result where advice is sought in connection with the management of the trust, including disputes about trust administration.

Most jurisdictions distinguish between communications about potential liability and communications about trust administration and apply the attorney-client privilege only to the former. Some jurisdictions reach this result by characterizing the beneficiaries as the true clients of the attorney. Other jurisdictions reach this result because of the obligation the law places on a trustee to furnish to the beneficiaries full and complete information regarding the trust, including opinions of counsel procured by the trustee to guide the trustee in the administration of the trust.

*Id*. at 486–87 (cleaned up).

Rather than deeming the exception apt because the beneficiaries are the "real clients" of an attorney advising the trustee about trust management, Judge Wettick was persuaded that a trustee's duty to provide beneficiaries with information about the trust property warranted the application of the exception in Pennsylvania.[4] In that vein, our Supreme Court in *In re Rosenblum's Estate*, 328 A.2d 158 (Pa. 1974) ("*Rosenblum*"), held that § 173 of the Restatement (Second) of Trusts was "declaratory of the common law of Pennsylvania." *Id*. at 165. That section provides:

---

[4] Since the case arises in later discussion, we note that an early adoption of the "real clients" approach in the United States occurred in *Riggs National Bank of Washington DC v. Zimmer*, 355 A.2d 709, 714 (Del. Ch. 1976) (rejecting claims of privilege over a memorandum prepared by an attorney for trustees upon reasoning that "[t]he fiduciary obligations owed by the attorney at the time he prepared the memorandum were to the beneficiaries as well as to the trustees[, such that] the beneficiaries were the clients of [the attorney] as much as the trustees were, and perhaps more so").

> The trustee is under a duty to the beneficiary to give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.

Restatement (Second) of Trusts § 173.[5]

Although the **Rosenblum** Court had not expressly embraced the section's comments, Judge Wettick observed that comment b, addressing "what need not be communicated," exempted from the information that must be furnished to beneficiaries only "opinions of counsel obtained by him at his own expense and for his own protection." Restatement (Second) of Trusts § 173 cmt. b. Applying the section as elucidated by the comment, he held: "the trustee cannot withhold from any beneficiary documents regarding the management of the trust, including opinions of counsel procured by the trustee to guide the trustee in the administration of the trust, because trust law imposes a duty to make these documents available to the beneficiaries." **Follansbee**, 56 Pa. D. & C.4th at 491.

The fiduciary exception came before this Court in **In re Estate of McAleer**, 194 A.3d 587 (Pa.Super. 2018) ("**McAleer I**"). There, two beneficiaries objected to the trustee's accounting, alleging that enumerated

---

[5] As becomes pertinent *infra*, in recognizing the duty of a trustee to provide information about a trust to its beneficiaries, the **Rosenblum** Court observed: "Of course, a beneficiary's right to inspect trust records, like any other right, must be exercised in good faith and with due regard for the rights of other interested parties." **Rosenblum**, 328 A.2d at 165.

- 13 -

trustee and attorney fees were unreasonable. The beneficiaries served discovery requests seeking the billing statements supporting the fees. The trustee produced redacted invoices, prompting the beneficiaries to file a motion to compel, which the orphans' court granted, citing **Follansbee**. The trustee appealed, asking this Court to find that it was error for the court to order the production of unredacted bills because privileged attorney-client and work product material would be disclosed.

This Court quashed the appeal upon concluding, *inter alia*, that it did not come from a collateral order that was immediately appealable pursuant to Pa.R.A.P. 313(a). That Rule defines a collateral order as one that is: (1) "separable from and collateral to the main cause of action," (2) "where the right involved is too important to be denied review," and (3) "the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). We found that the order was interrelated with the underlying cause of action such that the first prong of the test was unmet. **See McAleer I**, 194 A.3d at 594.

This Court went on to acknowledge that discovery orders compelling the disclosure of privileged material were generally appealable as collateral orders, but nevertheless ruled that the trustee had not made a colorable claim of privilege in that case. We determined that the trustee had not satisfied his burden of production, observing that he had at no point "set forth specific facts to show that either the attorney-client privilege or the work product

doctrine was applicable and properly invoked" as to the documents in question. *Id*. at 596. Specifically, relying on **Rosenblum** and § 82 of the Restatement (Third) of Trusts, discussed further *infra*, we indicated that the trustee's failure "to establish that the redacted information pertained to communications from counsel retained for [his] personal protection in the course of litigation," left us "to conclude that the information contained in the attorney invoices qualifies as communications subject to the general principle entitling a beneficiary to information reasonably necessary to the prevention or redress of a breach of trust or otherwise to the enforcement of the beneficiary's rights under the trust." *Id*. at 597. Since there was no properly-invoked claim of privilege, the order compelling production was not appealable as a collateral order.

The Pennsylvania Supreme Court granted the trustee's petition for allowance of appeal to consider whether "the attorney-client privilege and work product doctrine protect communications between a trustee and counsel from discovery by beneficiaries when the communications arose in the context of adversarial proceedings between the trustee and beneficiaries[.]" **In re Estate of McAleer**, 248 A.3d 416, 423 (Pa. 2021) ("**McAleer II**") (cleaned up). Ultimately, the justices deciding appeal were unable to reach a consensus on that issue.[6]

---

[6] Chief Justice Baer did not participate in the matter.

The **McAleer II** Court was unanimous on one issue, namely that this Court erred in quashing the appeal for lack of jurisdiction because the trial court's order satisfied all three prongs of Rule 313. All six justices agreed that the third prong of the test regarding severability was satisfied because the propriety of the attorney fees was "conceptually distinct from the fundamental question of whether a party even can invoke the protections of the attorney-client privilege to prevent disclosure of fee information in the context of trust administration." **Id**. at 425. As for the other two prongs, the Court pithily observed: "it is well-settled that the right involved—the protection of confidentiality inherent in the privilege—is too important to be denied review and would be irreparably lost if review is postponed until after final judgment."[7] **Id**.

_____

[7] Despite this holding, Objector suggests that the instant appeals are not properly before us because the appealed-from order directs only the production of nonprivileged materials and expressly permits Trustee to withhold privileged documents and compile a privilege log for them. **See** Objector's brief (Trust) at 17-18. He suggests that the absence of a privilege log precludes a ruling as to the discoverability of any particular document or documents. **Id**. at 19-20 (citing, *inter alia*, **Ignelzi v. Ogg, Cordes, Murphy & Ignelzi, LLP**, 160 A.3d 805, 813-14 (Pa.Super. 2017) (quashing appeal where the appellants had not produced a privilege log to establish the applicability of the privilege as to any particular documents to allow the trial court to rule in the first instance on the discoverability of each)).

Objector's argument puts the cart before the horse, presuming the answer to the question that Trustee presents to this Court, *i.e.* whether the orphans' court properly delineated what was privileged and what was not. That view
*(Footnote Continued Next Page)*

Turning to the substance of the appeal, Justice Wecht authored the opinion in support of affirmance and was joined by now-Chief Justice Todd and Justice Dougherty. Justice Wecht examined the history of the fiduciary exception, tracing it from English cases of the mid-1800s, to the Delaware Chancery Court's **Riggs** decision noted above, to Judge Wettick's **Follansbee** opinion, through the trend in recent decades had been to reject it. **Id**. at 426-33. Justice Wecht expressed agreement with comment b to § 173 of the Second Restatement, but rejected the revision presented in § 82 of the Third Restatement, which states in relevant part:

> A trustee is privileged to refrain from disclosing to beneficiaries or co-trustees opinions obtained from, and other communications with, counsel retained for the trustee's personal protection in the course, or in anticipation, of litigation (*e.g.*, for surcharge or removal). This situation is to be distinguished from legal consultations and advice obtained in the trustee's fiduciary capacity concerning decisions or actions to be taken in the course of administering the trust. Communications of this latter type are subject to the general principle entitling a beneficiary to information that is reasonably necessary to the prevention or

---

of the appealability assessment was among the bases for quashal cited by the **McAleer I** Court, only to be resoundingly reversed in **McAleer II**.

Here, Trustee claims that, contrary to the ruling of the orphans' court, he should be allowed to withhold communications with counsel and counsel's work product related to the Civil Action, not just his interactions with attorneys for his personal protection in defending the challenges to Objector's objections to the accountings. The order *sub judice* mandated the immediate disclosure of other communiques that Trustee claims are privileged, only permitting Trustee to withhold and create a privilege log for personal-protection opinions of counsel. Hence, to the extent that the order rejected Trustee's claims of privilege as to a whole class of communications and required their disclosure, we deem this interlocutory appeal seeking review of that portion of the order properly before us pursuant to **McAleer II**.

redress of a breach of trust or otherwise to the enforcement of the beneficiary's rights under the trust.

When the roles and objectives of legal consultation are unclear, the question of who has paid for the legal services, or who ultimately will be required to pay those expenses, although potentially relevant, involves other and complicated considerations . . . so that this matter is not determinative in resolving issues of privilege.

Restatement (Third) of Trusts § 82 cmt. f.

Ultimately, Justice Wecht concluded:

While we appreciate the concerns that animated many jurisdictions' retreat from the fiduciary exception over the past quarter century, we would stand fast. Transparency remains the cornerstone of the fiduciary duty. Because trustees in essence serve as proxies for trust beneficiaries, their fiduciary duties compel them always to act in accordance with the latter's best interests in mind. To the extent that the attorney-client privilege obscures that fundamental obligation by frustrating beneficiaries' entitlement to information about trust management, the privilege must yield. As with all considerations of restrictions on attorney-client confidentiality, predictability is critical. Indeed, a categorical approach for fiduciaries akin to that expounded in *Riggs* would bring greater clarity to the parameters of Pennsylvania's common-law privilege within the law of trusts. A categorical approach, moreover, would produce additional benefits, including easier application in our lower courts and predictability and notice to trustees and beneficiaries alike.

To that end, we would hold that, where legal counsel is procured by a trustee utilizing funds originating from a trust corpus, the beneficiaries of that trust are entitled to examine the contents of communications between the trustee and counsel, including billing statements and the like. That examination necessarily includes reviewing the contents of invoices in order to determine precisely what was procured with trust funds where the reasonableness of costs is at issue. The attorney-client privilege and work product doctrine cannot shield those disclosures in this Commonwealth. To hold otherwise would enable fiduciaries to weaponize trust assets reserved for beneficiaries against those very beneficiaries in litigation over the propriety of trust management. Since those

- 18 -

same beneficiaries simultaneously would be obliged to foot their own legal bills, they would, in essence, be paying for both parties' lawyers. That result is untenable[.]

***McAleer II***, 248 A.3d at 435–36 (opinion in support of affirmance).

Justice Saylor did not join the opinion in support of affirmance. He wrote separately to suggest that the General Assembly was better tasked than the Court with "addressing the inherent tension between beneficiaries' right to information about trust activities and the essential protections afforded by the attorney-client privilege in connection with prudent trust administration," and decide whether to erode the codified attorney-client privilege. ***Id***. at 438 (Saylor, J., concurring). Justice Saylor further asserted "that the opinion supporting affirmance under-weights the potential that trustees, in light of the fiduciary exception, may not seek the advice of counsel or may withhold sensitive information material to the rendition of necessary legal advice," and that requiring trustees to "personally shoulder the expense for legal services associated with their official responsibilities" was "wholly impracticable, particularly relative to complex matters in which the cost is prohibitive." ***Id***.

Justice Donohue, joined by Justice Mundy, opined that the fiduciary exception should be rejected as "ill-advised because it ignores the sanctity of the roles that the attorney-client privilege and work product doctrine play, including in the context of a trustee's retention of counsel to provide legal advice regarding trust administration." ***Id***. at 439 (Donohue, J., concurring and dissenting). Justice Donohue observed that the ***Rosenblum*** Court did

not adopt comment b when it declared that § 173 of the Second Restatement reflected Pennsylvania law, and took issue with two ***Riggs*** principles "as being unsupported by Pennsylvania law." ***Id***. at 441. First, Justice Donohue disagreed that the beneficiaries are the true clients when a trustee obtains legal counsel for managing the trust, suggesting that "[a]dvice on the proper course of administration is rendered to assist the trustee in exercising her judgment in carrying out the terms of the trust, not to necessarily benefit any or all beneficiaries under the trust." ***Id***. at 442.

Second, Justice Donohue "challenge[d] Justice Wecht's predicate that by paying a lawyer out of the corpus of the trust, the attorney is spending money owned by the beneficiaries[,]" because beneficiaries do not own the trust property, having instead only an equitable right to receive the benefit provided pursuant to the trust instrument. ***Id***. She further opined "there is certainly nothing in [§ 173's] 'right to inspect' that requires the annihilation of the privilege unless the trustee pays for it and it is within this Court's authority to rule that it does not destroy the privilege owned by the trustee regardless of the source of payment of attorney's fees." ***Id***. at 444.

Overall, the opinion supporting reversal concluded as follows:

In navigating the potentially complex legal landscape of trust administration, a trustee should seek competent legal counsel not only for guidance on what will best serve the trust's purpose, but also to determine the potential risks that a trustee is subject to when making these difficult decisions in the course of trust administration. This is an anticipated cost of administration, payable out of corpus funds with no strings attached, like the loss

of attorney-client privilege. The fiduciary exception as crafted by Justice Wecht has the potential to not only discourage trustees from seeking legal advice in the course of trust administration, but could very well discourage service as a trustee altogether.

*Id*. at 445.

This fractured view on the substantive issue of whether to recognize the fiduciary exception resulted in the affirmance by operation of law of this Court's alternate ruling that the trustee had not substantiated his claim of privilege in the trial court.

The following year, this Court again had occasion to consider the status of the exception in this jurisdiction in *Scaife*. In that case, the estate of one of a trust's beneficiaries asserted that the trustees violated their fiduciary duty by not creating a separate trust for the decedent before her death. During the litigation, the estate requested, among other things, documents concerning legal services provided to the trustees. The trustees objected and produced a privilege log. The orphans' court granted the estate's motion to compel upon determining that "a fiduciary exception [to attorney-client privilege and work product doctrine] is not inconsistent with Pennsylvania law." *Scaife*, 276 A.3d at 782.

The trustee appealed the ruling to this Court. We examined the law governing the fiduciary duty of a trustee, including *Rosenblum*, § 173, and a subsequently-enacted provision of the Probate, Estates and Fiduciaries Code speaking to a trustee's duty to inform. *See* 20 Pa.C.S. § 7780.3(a) (providing,

*inter alia*: "A trustee shall promptly respond to a reasonable request by the settlor of a trust or by a beneficiary of an irrevocable trust for information related to the trust's administration."). We then reviewed the attorney-client privilege and work product doctrine before summarizing the fiduciary exception thereto, with a discussion of ***Follansbee***, ***McAleer I***, *and* ***McAleer II***.

Upon consideration of this body of law, we ultimately held that "a fiduciary exception to the attorney-client privilege is consistent with Pennsylvania law." ***Scaife***, 276 A.3d at 793. Noting that both the attorney-client privilege and a trustee's duty to provide information to beneficiaries were codified, we cited ***Follansbee*** with approval for the proposition that "[a] trustee cannot withhold from any beneficiary documents regarding the management of the trust, including opinions of counsel procured by the trustee to guide the trustee in the administration of the trust, because trust law imposes a duty to make these documents available to the beneficiaries." *Id*. (cleaned up).

However, in contrast with Justice Wecht's opinion in ***McAleer II***, we found "no support for conditioning the fiduciary exception on whether the trust paid counsel fees." *Id*. Rather, this Court highlighted that the Rules of Professional Conduct allow for a third party to pay a lawyer to represent a client, but forbid the lawyer from allowing the payor to direct the lawyer's exercise of professional judgment. *Id*. (citing Pa.R.P.C. 5.4(c)). We indicated

that evidence of who paid for the attorney's services may inform the applicability of the exception, but was not dispositive.

In sum, the **Scaife** Court concluded that: (1) "[t]he trustee's duty is to disclose any beneficiary documents regarding the management of the trust, including opinions of counsel procured by the trustee to guide the trustee in the administration of the trust[;]" but (2) "a trustee is privileged from disclosing to beneficiaries or co-trustees' opinions obtained from, and other communications with, counsel retained for the trustees' personal protection in the course, or in anticipation, of litigation." **Id**. (emphases omitted). Since there was no litigation pending in **Scaife** prior to the accounting, we held that the orphans' court properly compelled the trustees to produce the requested documents pursuant to the fiduciary exception.

Mindful of this precedent, we return to the dispute before us. We reiterate that the order of the orphans' court *sub judice* required Trustee "to disclose all documents relating to administration of the Trust, including opinions of counsel procured by Trustee for guidance in administration of the Trust and excepting only opinions of counsel obtained for the personal protection of Trustee in the course or in anticipation of litigation." Order, 9/6/24, at ¶ 3. **See also id**. at ¶ 8 (providing the same regarding the Estate case discovery requests). Although, on the surface, the ruling of the orphans' court appears to be consistent with **Scaife**, Trustee suggests that the

particular circumstances of this case place additional documents outside the scope of the fiduciary exception.

Trustee's position is that the above authorities make it plain that, just as the attorney-client and work product privileges are not absolute, neither is the fiduciary exception to those privileges. He maintains that the fiduciary exception was applied in those cases "in very limited circumstances where a challenge is brought by a beneficiary to the management of a trust," and emphasizes that none of them "addressed whether the fiduciary exception extends to communications and documents between a trustee or personal representative and counsel relating to active civil litigation against a beneficiary of the trust or estate." Trustee's brief (Trust) at 13, 17.

Trustee indicates that the documents for which he seeks to invoke privileges "are not related to the administration of the Trust or management of assets." Trustee's brief (Trust) at 21. Rather, "[t]he communications and documents which are proposed to be withheld are related to the active litigation against a debtor, who is also a beneficiary." *Id*. at 21-22. Trustee suggests that public policy interests warrant recognition of the inapplicability of the fiduciary exception under these circumstances, which he fleshes out as follows:

> Currently, there are four beneficiaries of the Trust. Trustee must act in the best interest of all beneficiaries of the Trust and not just

- 24 -

Objector. Further, pursuant to 20 Pa.C.S. § 7780.1,[8] Trustee was required to pursue a claim against Objector for the debts owed by Objector to the Trust. The other beneficiaries of the Trust are harmed by the fact that Objector has not reimbursed the Trust for the taxes associated with the distributions to Objector. Objector seeks to gain an unfair advantage in the Civil Action which relates to the debt owed to the Trust by learning the privileged and confidential communications and documents between the Trust and its attorneys related to strategy, settlement positions, opinions of counsel, and analysis of strengths and weaknesses of the claim.

*Id*. at 19 (cleaned up). Stressing **Rosenblum**'s admonition that the rights of a beneficiary to inspect records must be exercised in good faith, Trustee posits that "Objector has no good faith basis for seeking the communications and documents exchanged between the Trust and its counsel related to the Civil Action." *Id*. at 20.

In his brief, Objector directs most of his argument to the appealability of the order of the orphans' court and Trustee's failure to identify with particularity any documents he claims are subject to privilege. **See** Objector's brief (Trust) at 16-26; Objector's brief (Estate) at 17-27. On the substantive issue, he maintains that **Scaife** is materially indistinguishable and mandates affirmance.

Particularly, Objector indicates that "**Scaife**, like the instant case, was initiated by the filing of trustees of a petition for adjudication, which, much

---

[8] That statute provides, in pertinent part: "[A] trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust." 20 Pa.C.S. § 7780.1.

like this case, presented a first and final accounting of a trust." Objector's brief (Trust) at 28. He notes that both trusts were in existence for decades, during which the respective trustees engaged the services of law firms to manage the trust. *Id*. In both cases, beneficiaries objected to the accountings and sought information regarding the trust expenses. *Id*. Objector asserts that, in each case, the orphans' court properly ruled that, in the litigation of the dispute between the trustee and the objecting beneficiaries, the fiduciary exception permitted the trustee to withhold only those communications pertaining to his personal protection in anticipation of or in the course of litigation. *Id*. at 28-30. He argues that Trustee's request for a "litigation exception" to the fiduciary exception is irreconcilable with *Scaife*, which, like the instant matter, involved "ancillary litigation" between the trustee and beneficiaries that "ar[ose] directly out of the administration of the Trust." *Id*. at 32, 35. The existence of this "ancillary litigation," however,

> did not impede this Court in applying the fiduciary exception to discovery, because the Court recognized the overarching principle that a fiduciary is simply not in a position to conceal information about a trust or an estate from a beneficiary, even though that information may redound to the advantage of the beneficiary in litigation against the trustee. In fact, upon reflection it is precisely that sort of information to which a beneficiary is indisputably entitled; and it is precisely that information that a trustee cannot lawfully conceal.

*Id*. at 35. Accordingly, Objector concludes, *Scaife* is dispositive in defeating Trustee's claims of privilege.

For his part, Co-Administrator advocates for affirmance of the order as to the Estate for the reasons detailed in the Rule 1925(a) opinion of the orphans' court. **See** Co-Administrator's brief (Estate) at 1-2. Therein, the court explained its decision as follows:

> The crux of [Trustee]'s argument is that he and Objector are adversaries in a companion civil case. This argument lacks merit, and [Trustee] cannot dodge the fiduciary exception by stating that the parties are adversaries. The very nature of the fiduciary exception is to promote the transparent administration of trusts, even when a beneficiary challenges a trustee's actions. This is because the trustee owes beneficiaries certain duties, including a duty to disclose any beneficiary documents regarding the management of the trust, including opinions of counsel procured by the trustee to guide the trustee in the administration of the trust.
>
> The mere adversarial nature of the parties does not and cannot destroy [Trustee]'s duties to Objector. Objector is challenging [Trustee]'s management of the Trust and Estate and believes that [Trustee] breached fiduciary duties. These underlying objections are purely adversarial in nature. This does not destroy the rights of the beneficiary or the duties of a trustee. The appellate courts upheld these same rights and duties in **Rosenblum**, **McAleer**, and **Scaife**, despite the adversarial nature of the relationships of the parties in each case. The parties share an adversarial relationship in the two matters at hand. The fact that they are adversaries in a separate civil case is irrelevant. If the court were to accept [Trustee]'s argument, then the fiduciary exception would be hollow and meaningless, as any trustee can surmount it simply by filing a civil suit against a beneficiary.

Orphans' Court Opinion, 11/14/24, at 10.

Upon thorough examination, we perceive flaws in the positions of the parties and that of the orphans' court. Beginning with Trustee's arguments, we disagree with his contention that the fiduciary exception, as adopted in

- 27 -

*Scaife*, applies only "in very limited circumstances where a challenge is brought by a beneficiary to the management of a trust." Trustee's brief (Trust) at 17. As recognized in **Rosenblum**, the beneficiaries' right to information as enunciated in § 173 is not tied to the existence of a challenge, but pertains at all times. *See Rosenblum*, 328 A.2d at 165 ("A beneficiary's right of inspection has an independent source in his property interest in the trust estate, and the right may be exercised irrespective of the pendency of an action or proceeding in court."). The fiduciary exception allows beneficiaries access to otherwise-privileged materials at any time they exercise their rights to inspect trust documents. It is the rise of a challenge by a beneficiary that permits the fiduciary to withhold privileged materials related to the defense of said challenge rather than produce them in accordance with the fiduciary exception.

Turning to Objector's arguments, we cannot concur that the circumstances of this case are materially indistinguishable from those in *Scaife*. Contrary to Objector's representation, this dispute was not initiated by Trustee's accounting and petition for adjudication. As we detailed at the outset, the instant litigation commenced when Objector raised claims for an accounting and potential removal and surcharge in his answer, new matter, and counterclaim filed in response to Trustee's complaint against Objector on behalf of the Trust in the Civil Action that was ultimately transferred to the orphans' court.

Additionally, we cannot deem the Civil Action, which is indeed ancillary to the accounting and objection, to be analogous to the litigation in **Scaife**, which involved beneficiaries challenging the trustee's decision not to create a second trust. The trustee and beneficiary in **Scaife** were not in an adversarial position until the beneficiary's estate directly challenged the trustee's decision not to create a separate trust for the decedent beneficiary before she died, and the litigation between those parties related directly to the trustee's chosen implementation of the trust instrument. Here, the litigation involves not a challenge to the Trustee's exercise of his fiduciary duties in executing the Trust's provisions, but the ancillary matter of whether Objector owes money to the Trust pursuant to the Agreement. Critically, the adversarial relationship between Trustee and Objector predates the Civil Action, and, indeed, was the genesis of the Agreement that Trustee initiated the Civil Action to enforce.

As for the opinion of the orphans' court, we perceive a critical misapprehension of the nature and scope of Trustee's suggested adversary carve-out from the fiduciary exception. The orphans' court appears to believe that Trustee is claiming that, once a trustee and beneficiary become antagonists, the fiduciary exception ceases to apply such that the beneficiary loses access to all attorney-client and work product materials. Were that the case, we agree with the orphans' court that the fiduciary exception would be futile, because, as Objector aptly noted, it is when a beneficiary has cause to

question a trustee's actions that the beneficiary is most in need of information explaining the trustee's choices.

However, that is not what Trustee has proposed. Instead, Trustee suggests that the existence of an adversarial relationship between a beneficiary and trustee removes from the fiduciary exception only those privileged communications that concern that conflict. *See*, *e.g.*, Trustee's brief (Trust) at 19 (referencing "communications and documents between the Trust and its attorneys related to strategy, settlement positions, opinions of counsel, and analysis of strengths and weaknesses of the [Civil Action] claim"). In other words, even accepting Trustee's position, Objector still has the right pursuant to the fiduciary exception to attorney-client documents relating to all matters of the trust management except those reflecting advice Trustee sought in connection with his litigation against Objector.

We have found no authority directly on point to the circumstances presented by this case. Yet, we deem Trustee's position to be consistent with the purposes of the privileges and the fiduciary exception thereto and with the precedent established by *Rosenblum*, *Follansbee*, and *Scaife*.

First, protecting Trustee's communications with counsel concerning the Trust's action against Objector furthers the goals of the privileges in the same way that underlies the exclusion of personal-protection communications from the scope of the fiduciary exception. *See BouSamra*, 210 A.3d at 976–77 (explaining purpose of work product doctrine); *Yocabet*, 119 A.3d at 1027

(same as to attorney-client privilege). In either context, counsel will be unable to provide appropriate advice about how to handle the dispute if the trustee is discouraged from providing candid and complete information, and counsel's legal analysis will suffer if she must fear that her work product will be used against her client by his adversary. Meanwhile, whether the trustee is defending a claim or pursuing one, he will waive the protections of the privilege "by asserting a claim, defense or argument that places the attorney's communications or actions in issue or attempts to prove a claim or defense by reference to privileged material." *Carlino E. Brandywine*, 301 A.3d at 479.

Second, we discern no frustration of the purpose of the fiduciary exception by forestalling its application not only when a trustee is at odds with a beneficiary and consults with an attorney to defend an attack on his performance, but also where a trustee utilizes counsel to enforce a claim of the trust against a beneficiary. Exempting information exchanged in both adversarial contexts aligns with *Rosenblum*'s limitation of a beneficiary's right to inspect trust documents to a good faith interest in the propriety of the trust management. Effectively depriving the trustee, and the trust itself, of the confidential assistance of counsel in seeking repayment of trust assets from a beneficiary, to the detriment of other beneficiaries, is as undesirable as doing so when the trustee must defend against a beneficiary's accusations of impropriety. Just as a trustee may not "weaponize trust assets reserved

for beneficiaries against those very beneficiaries in litigation over the propriety of trust management," **McAleer II**, 248 A.3d at 435–36, a beneficiary should not be able to weaponize trust assets against other beneficiaries to avoid a debt allegedly owed to the trust. In neither scenario is there a good-faith basis for the adversarial beneficiary to obtain privileged documents unless and until advice-of-counsel is raised by the trustee in the course of the dispute.

The extension of the adversary exemption from the fiduciary exception from a trustee's communications with counsel in a defensive position, to those undertaken when the trustee is in an offensive position against a beneficiary, is thus compatible with Pennsylvania precedent. Moreover, this holding is in line with decisions in other jurisdictions that have adopted the fiduciary exception finding that the exception did not apply in a variety of contexts involving an adversarial relationship between the fiduciary and the party requesting privileged information.

For example, in **Hutchinson v. Farm Family Cas. Ins. Co.**, 867 A.2d 1 (Conn. 2005), the plaintiffs filed a bad faith claim against the insurer for failure to pay underinsured motorist benefits and sought in discovery the insurer's claims file. The insurer withheld some of the material and invoked attorney-client privilege. The lower courts ordered production of the redacted documents, but the Connecticut Supreme Court reversed. It noted that the relationship between the parties was adversarial from the outset, they had no common interests, and the insurer had taken no actions on behalf of the

plaintiffs. Consequently, the Court held that "the principle that the attorney-client privilege does not bar disclosure by a fiduciary to its principal of privileged materials relating to their common interests has no application here." *Id*. at 10.

Similarly, in **Metropolitan Bank and Trust Co. v. Dovenmuehle Mortg., Inc.**, 2001 WL 1671445 (Del. Ch. 2001), the court addressed whether the fiduciary exception granted a limited partner access to communications between the general partner and counsel and concluded that the exception ceased to apply once the parties' interests diverged and the fiduciary had reasonable cause to believe that litigation was likely to ensue.[9]

Here, Trustee and Objector have been in an adversarial relationship about the distribution of Objector's shares of HBI stock since Martha died. Trustee did not wish to distribute the shares until the taxes had been assessed and paid, but he nonetheless did so upon Objector's agreement to indemnify Trustee for the taxes ultimately paid from the Trust assets. Plainly, it was because Trustee and Objector were in conflict and Trustee foresaw the reasonable likelihood of litigation that he insisted that Objector execute the

---

[9] **See also Beck v. Manufacturers Hanover Trust Co.**, 218 A.D.2d 1, 17–18 (N.Y.App.Div. 1995) (holding, in case where the plaintiffs had long been in conflict with the trustee, that the fiduciary exception did not mandate disclosure of attorney-client communications given the adversarial relationship and the fact that the requested material was "specifically relevant to the handling of the very issues the plaintiffs had been threatening to litigate"); 47 A.L.R.6th 255 at § 7 ("View that fiduciary duty exception is no longer applicable when parties' interests become adverse") (collecting cases).

Agreement before acceding to his demand for immediate distribution of the stock. Trustee's initiation and litigation of the Civil Action at no point was undertaken as Objector's proxy for his benefit. Rather, the interests of Objector and Trustee have been at odds from the start as to the matters at issue in the Civil Action, just the same as they diverge in the litigation in the instant proceedings to the extent that Objector has required Trustee to seek counsel for his personal protection to defend claims of impropriety. There is no question under **Scaife** that privileged materials related to the latter are not subject to the fiduciary exception, and we see no cause to treat the former differently.

For these reasons, we hold that privileged communications are outside the scope of the fiduciary exception not only to the extent that they speak to a trustee's solicitation of advice as to the defense of claims of mismanagement, but also when they concern a trustee's pursuit of claims against a beneficiary on behalf of the trust. Insofar as the orphans' court ordered Trustee to produce the latter and create a privilege log only as to the former, it erred.

Accordingly, we reverse the order to the extent that it required Trustee to produce Trustee's communications with counsel, and counsel's work product, related to the Civil Action. We affirm the order in all other respects. On remand, Trustee may withhold that information, along with materials pertaining to his personal protection, subject to the duty to detail the

documents or portions thereof withheld in a privilege log as specified in the order.

Order affirmed in part and reversed in part. Cases remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2025